PORTER WALKER v. THE MOBILE AND OHIO RAILROAD COMPANY.

1. PRINCIPAL AND AGENT: SUBSCRIPTION FOR STOCK IN A RAILROAD CO., TAKEN BY A PERSON WITHOUT AUTHORITY, GOOD WHEN RATIFIED.—It is not essential to the validity of a contract of subscription for capital stock in a railroad company, that the person who procured it was at the time duly authorized to do so by the company. It will be sufficient to make it binding on both parties if the company (in a reasonable time thereafter) ratify the act of their pretended agent.

2. SAME: SAME: ACTION BY RAILROAD CO. TO RECOVER STOCK, A RATIFICATION OF THE SUBSCRIPTION.—An action by a railroad company against a subscriber for stock, to recover instalments due thereon, is a ratification of the act of a person, who, without previous authority from the plaintiffs, procured the subscription.

3. SAME: WHERE RATIFICATION OF ACT OF AGENT APPEARS OF RECORD, IT WILL BE NOTICED ON DEMURRER.—If it appear of record that the act of a pretended agent of the plaintiffs has been ratified by them, the plea of the defendant, denying the authority of such agent, would be bad on demurrer.

4. RAILROADS: FRAUD: EXPRESSIONS OF OPINION AS TO VALUE OF STOCK, PROFITS, ETC., THOUGH FALSE, DO NOT AMOUNT TO FRAUD.—Representations made by an agent of a railroad company, in reference to the value of a donation of land made by Congress to the company, and in relation to the amount of the assets of the company, and their ability to complete the road within a specified time, and the probable cost and profits of the road, though false and exaggerated, and intended by him to induce persons to subscribe for stock in the company, are but mere expressions of opinion in reference to matters open to the investigation of both parties; and a person, subscribing for stock in the company,

has no right to rely upon them; and, if he does so, and thereby is induced to invest his means in an unprofitable enterprise, it will be no ground for avoiding the contract of subscription.

5. SAME: EFFECT OF RAILROAD CO. FALSELY HOLDING OUT A PERSON AS A SUB-SCRIBER TO INDUCE OTHERS TO TAKE STOCK.—A subscriber for stock in a railroad company cannot avoid the contract of subscription, upon the ground that the agent, who procured it, obtained, from an influential person in the neighborhood, whom he represented to be well acquainted with such matters, a colorable subscription for stock, with the secret understanding that he was not to be bound thereby, and presented said subscription to the subscriber and others as *bonâ fide*, to induce them to take stock, unless it also appear that he relied upon that fact, and was induced thereby to make the subscription.

6. SAME: CONTRACT OF SUBSCRIPTION: EFFECT OF PROMISE BY AGENT TO ACCEPT PAYMENT OF STOCK IN LABOR, ETC.—Whether the representation of an agent, who procured a subscription for stock in a railroad company, that payment of the amount subscribed would be accepted in provisions and labor, would bind the company: Quære? It would not bar a recovery of the amount of money subscribed if it were not shown that the defendant had offered payment in that way, and that he was damaged by the refusal of the company to accept it.

IN error from the Circuit Court of Tishemingo county.   Hon. P. T. Scruggs, judge.

The Mobile and Ohio Railroad Co. sued Porter Walker in the court below, to recover certain instalments, which were then past due, upon the subscription of said Walker, for capital stock in said company.

Among other pleas, the defendant filed the following:—

2d. That the stock, mentioned in said complaint, was purchased from, and the subscription thereof made to, one J. W. Wheeler, who represented himself to be the authorized agent of said company to sell said capital stock, and receive subscriptions therefor; whereas, in truth and in fact, said J. W. Wheeler was not then authorized to sell said stock, and receive subscriptions therefor.

3d. And the said defendant, for a further answer in this behalf, says, that the said plaintiffs ought not to maintain their aforesaid action against him, because, he says, that said supposed contract for capital stock and subscription therefor, mentioned in said complaint, was made with one J. W. Wheeler, who, at the time the same was made, represented himself as being the authorized agent of the plaintiffs for the purpose of selling said stock, and obtaining

subscriptions therefor, and who, before and at the time the same was so made, represented to said defendant that he was well acquainted with the assets, means and resources of said plaintiffs, and with the amount of funds which would be required to build and equip said road, for the transportation of passengers and freight, from the city of Mobile to the terminus of said road, on the Ohio river. Said defendant further says, that the said J. W. Wheeler, before and at the time said subscription was made, with the fraudulent design of inducing said defendant to contract and subscribe for said capital stock, falsely and fraudulently represented to the said defendant that the Congress of the United States had donated lands to the plaintiffs, from the proceeds of the sales of which, a large amount of money, to wit, $3,000,000, would be realized; which sum, together with the other means then owned and held by the said plaintiffs, would enable them to complete said road, and have the same fully equipped with engines, cars, &c., necessary for the transportation of passengers and freight over said road, from the commencement to the terminus thereof, within two years from that time, and that the stockholders therein would receive large dividends and profits; and that, in no event, would said defendant be required to pay more than one-half of the stock so subscribed by him, and that even that portion would be received in provisions and labor at the highest prices. Whereas, in truth and in fact, said lands are of but little value, and can be sold only for a small sum of money; and whereas, in truth and in fact, the amount of assets and means belonging to said plaintiffs are greatly insufficient to complete and equip said road, for the transportation of passengers and freight over said road, within said term of two years, or any other time; but, upon the contrary thereof, the said plaintiffs have been compelled to borrow large sums of money to enable them to pay for the labor actually done on said road now; and that a very large portion of the labor and materials necessary to be done and furnished on said road, so as to enable said plaintiffs to transport passengers and freight over the same, now remains undone and unfurnished; and that the said plaintiffs have no means out of which to pay for the same.

Said defendant further says, that at the time he so subscribed for said stock he was wholly unacquainted with the means and

ability of said plaintiffs for the completion of said road, and that he relied upon the said statements of the said J. W. Wheeler, which he then supposed to be true, and he would not then have contracted or subscribed for said stock, had he then known, or supposed, or believed said statements to be untrue and false ; but which the said defendant avers were then known to be untrue and false by the said Wheeler.    And the said defendant further avers, that the said J. W. Wheeler, with the design to induce him to contract and subscribe for said stock, and to make said fraud more complete and effectual, procured one J. H. Nelson, an influential man in the neighborhood, and who had formerly resided in the neighborhood of railroads in the State of South Carolina, and who was supposed and represented to be well informed as to the costs and profits of such improvements, ostensibly to subscribe for five shares of the capital stock in said railroad, but at the same time executed to said Nelson his obligation in writing, thereby obligating himself, as the agent of said company, to release said Nelson from his said subscription when requested by said Nelson; and said defendant further avers, that said J. W. Wheeler, at and before said contract and subscription were so made, fraudulently represented the same as *bonâ fide*, and that said Nelson was well acquainted with the costs and profits of railroads, and was willing to vest his money in said Mobile and Ohio Railroad Company ; whereas, in truth and in fact, said subscription of said Nelson was not *bonâ fide*, but was only pretended and colorable, and was made with the fraudulent design of inducing said defendant and others to contract and subscribe for stock in said railroad ; and whereas, in truth and in fact, said Nelson was not willing to invest his money in the said railroad.    And so the said defendant says that the said contract and subscription for stock was procured by the said false and fraudulent representations of said Wheeler, the agent of said plaintiffs, &c. And this he is ready to verify.

*Arnold* and *Hill*, attorneys for defendant.

The plaintiffs demurred to these two pleas, and the demurrer was sustained.    The defendant refusing to plead further, the cause was submitted to a jury upon the other plea of defendant, and a verdict and judgment were rendered for plaintiffs, to reverse which, the defendant prosecutes this writ of error.

*Arnold* and *Hill,* for the plaintiff in error.

We insist that the facts stated in said third answer constitute much stronger grounds for the avoidance of said contract and subscription for fraud and failure of consideration, than those stated in *Barrenger et al.* v. *Nesbit et al.,* 1 S. & M. 22. In that case, the note sued on was given for capital stock in the projected town of Upper Colbert. The defence was, that the note was procured by fraud; that Storke, the projector, by himself and agents, made false representations of the character and value of the lands, its eligibility as a site for a town, &c.; that he requested leading men to become subscribers, with the promise to release them; that the subscriber for stock was ignorant of the condition of the land, and subscribed upon the faith of the representations made to him, which were false and untrue. In that case the court held the defence to be good, on the grounds of fraud and failure of consideration.

In *Ellis* v. *Morton,* 2 S. & M. 187, the note sued on was given for a lot in the town of Emory. The defence was, that when the note was given, the payee falsely and fraudulently represented that the Methodist Conference had determined to build a college at said town; that said Conference had not determined to build said college, and did not build it; that the consideration had failed, &c.

The court, in that case, held this defence good.

In *Brewer* v. *Harris et al.,* 2 S. & M. 84, the note sued on was given for a lot in the town of Emory. The defence set up was, that the trustees, in advertising the sale of the lots, with the design to enhance the price of the lots, stated that they would build a male and female academy in said town; which induced the defendant to give an extravagant price for the lot for which the note was given. That the trustees failed to build the academy.

The court, in that case, held the defence good and available, upon the ground of failure of consideration. The above adjudications are all recognized and approved in *Anderson et al.* v. *Hill,* 12 S. & M. 679. In that case, the note sued on was given for a lot purchased from the commissioners of the town of Aberdeen. The defence set up was, that, at the time of the sale of said lot, grounds had been laid off for a railroad depot; that the lot for which the note sued on was given, fronted these grounds, and was

considered valuable as a business lot; that the railroad was abandoned, and the depot grounds sold out by the commissioner, which made the lot a back instead of a front lot, and greatly impaired the value thereof. The defence was held to be good, upon the grounds of failure of consideration and fraud, and available in a court of law.

The representations of Wheeler, the agent of the appellees, that he was acquainted with the means and resources of the company; that they were sufficient to complete and equip the road, within two years, without calling on the stockholders for more than one-half of the capital stock subscribed, all of which is alleged to have been false and untrue, and well known so to be by said Wheeler when he made them, were circumstances calculated to deceive and mislead the appellant, who alleges that he was entirely ignorant of the condition of the means of said company, and their ability to pay their liabilities, and complete and equip the road for the transportation of passengers and freight, are certainly stronger grounds for avoiding this contract for fraud and failure of consideration, than those in any of the above-mentioned cases.

Again, the procurement of the pretended subscription of said Nelson, is a much stronger evidence of fraud, than the advertisement of the lots in Emory, or the subscriptions for capital stock in the town of Upper Colbert.

In the case of *Oswald* v. *McGee*, 5 Cushman, 351, this court held, that, if representations are made upon a material point, either with or without a fraudulent intent by the seller, which misleads the purchaser and induces him to make the contract, relying upon the statements as true, the contract cannot stand.

We therefore insist that the false statements made by Wheeler were material, did mislead the appellant, and induced him to make the contract, and that they were untrue; and, that it is immaterial whether said Wheeler knew them to be untrue or not; "the contract cannot stand," as held in the last-mentioned case.

We further insist for appellant, that said Wheeler was the agent of the appellees in procuring contracts and subscriptions for capital stock, which was within the scope of his agency, or if he was not, at the time, the authorized agent for that purpose, they have ratified his acts as such, by seeking to enforce his contract, and are bound by

his fraudulent acts in making the contract. Story on Agency, sec. 127, 132, 137.

No one can hold any interest procured through the fraud of another, more than if the fraud were committed by himself. 10 S. & M. 173; 1 Cushman, 105.

Every one who engages in a fraudulent scheme forfeits any rights or protection under it, either in law or equity. 8 S. & M. 316; 4 Cushman, 273.

Positive and express proof of fraud is not required, but circumstances affording strong presumptions will be sufficient. 2 Cushman, 134; 1 Story, 199.

The rule of law that parol testimony cannot be heard to vary written agreements, has never been carried so far as to defeat the right to prove failure of consideration. *Buckels* v. *Cunningham et al.*, 6 S. & M. 358.

We insist that, although the contract was in writing, it was entirely competent to prove, by parol, the statements made in the third answer, alleging fraud and failure of consideration, as held in the last-mentioned case.

For the above, and many other reasons which might be given, authorities referred to, and to which reference might be made, we insist for the appellant that the judgment of the Circuit Court should be reversed, and the cause remanded.

*Hugh R. Miller*, for defendants in error.

The only error complained of, or relied upon by counsel for plaintiff in error is, that the court below erred in sustaining the demurrer to the second and third answers, found on pages 11, 12, *et seq.*

The second answer, alleges that the subscription was taken by one Wheeler, who represented himself as the agent of the railroad company, and avers that said Wheeler "was not then authorized to sell said stock, and receive subscriptions therefor."

This answer does not aver that the contract was not obligatory on the plaintiffs below and the defendant, but simply avers that, at the time of taking the subscription, "then" said agent had no power to bind the railroad company.

The answer may be true, and yet the contract be obligatory upon both parties. The contract is, by its terms, with the railroad com-

pany, and it is sued upon by the company. A subsequent ratification is equivalent to an original authority. Story on Agency, §§ 239, 247, 259; 6 Man. & Gran. 236; 9 Cranch, 153.

The plaintiffs, by accepting and receiving the subscription, and instituting suit to enforce it, ratified and confirmed the taking of it. Story on Ag., §§ 247, 259, and note 2; Dunlap's Paley on Agency, 171, note *o*; Ang. & Ames on Corp. (new edition), § 304; 6 Man. & Gran. 241; 1 Adol. & Ellis, 526; *Doe ex dem.* v. *Pierce*, 2 Camp. R. 96; *Goodtitle* v. *Woodward*, 3 Barn. & Adol. 689.

There could be no more unequivocal and conclusive evidence of ratification than the institution of a suit to enforce the contract. *Planters' Bank* v. *Sharp*, 4 S. & M. 75.

It is an admission of record, and forever estops the party suing. 17 Mass. R. 97.

The ratification relates back to the inception of the contract. Story on Agency, § 239, *et seq.*

The demurrer was, therefore, properly sustained to this answer.

But the error principally insisted upon by plaintiff in error, is the sustaining the demurrer to the third answer.

In determining the sufficiency of this answer, it is important to remember that, in subscriptions for stock in incorporated companies, the charter is the law of the contract, and all its provisions are to be regarded as incorporated into the contract.

That, in this case, the subscriber knew that the affairs of the company were to be managed and controlled by a board of directors, who had the sole power to call for payments of stock from time to time, as, in their opinion, the exigencies of the company might require; and that it was for them to determine whether the work should be expedited or retarded.

The representations, designated as fraudulent in the answer, are wholly immaterial, and do not amount to fraud. *Anderson* v. *Hill*, 12 S. & M. 679.

They were merely the expression of speculative opinions about matters, in relation to which each party had an equal opportunity to be correctly informed. Ib.

That Congress had donated lands, was a matter evidenced by public law; and, whether much or little would be realized from their sale, was altogether problematical.

Whether the means of the company were sufficient to enable

them to complete the road within any fixed period of time, or whether the stockholders would receive large or small dividends, was, of course, a mere matter of speculation, about which it was impossible for any one to have more than a mere opinion.

The representation that Nelson had subscribed and was willing to invest his money in stock, is also immaterial. It amounts to nothing more than a statement that in Nelson's opinion the investment was a good one.

If the unfounded or mistaken opinion of Wheeler does not amount to fraud, his statement as to the opinion of Nelson cannot amount to it.

The statement of the answer is, that Nelson had subscribed, but that the agent had given him an obligation to release him on request, and it is not pretended that he ever requested to be released.

It is alleged that Wheeler was the agent of the company, to take subscriptions for stock, but it is not pretended that he had authority to release those who had subscribed.

The power to take subscriptions, does not imply a power to release them.

The obligation to release Nelson was, as stated in the answer, void.

But what do these representations amount to? Do they show any failure of consideration? or how can any injury, in connection with the substance of the contract, result to the defendant from them? The defendant subscribed for five shares of stock, and thereby became entitled to the rights and privileges of a member of the corporation. This was the sole consideration of the contract. If the alleged representations were false, it was *damnum absque injuria*. Ang. & Ames, §§ 517, 518, 541 (edit. 1852); 2 Penn. R. 466.

"The fraud that will vitiate a contract must be material to, it must relate distinctly and directly to this contract; and it must affect its very essence and substance." 2 Pars. on Con. 266, 267.

"The fraud must work an actual injury. If it be only an intended fraud, which is never carried into effect, *or if all be done that was intended*, but the expected consequences do not result from it, the law cannot recognize it." Ib. 268.

"And if no damage be caused by the fraud, no action lies." Ib.

There can be no question that, under the subscription as stated in the answer, all the rights, privileges, and benefits accrued to the subscriber, which could by possibility have accrued to him, if the alleged representations had been true.

The cases of *Ellis* v. *Martin*, 2 S. & M. 187, and *Brewer* v. *Harris*, 2 Ib. 84, cited by counsel for plaintiff in error, are wholly unlike the case at bar. In the last case, Judge Thacher says: " The testimony offered, was designed to impeach the legality of the whole contract on the score of fraud, and to *show a total failure of the consideration of the note.*"

The facts stated in the answers in the case before the court do not tend to show either a total or partial failure of consideration.

It would be absurd to hold, that representations which, if true, could not by possibility impair the consideration of the contract, or add to it, were material.

No other question is presented by the counsel of appellants, or desired, by either party, to be considered by the court.

HANDY, J., delivered the opinion of the court.

This action was brought to recover the amount due by the plaintiff in error, as a subscriber to the capital stock of the defendants in error. Two grounds of defence are set up in the pleas.

1st. That the subscription was taken by a person who represented himself to be the agent of the company for that purpose, but, in fact, was not authorized to receive subscriptions.

2d. That the agent who obtained the subscription, with the fraudulent design of obtaining the same, represented to the plaintiff in error that the Congress of the United States had donated to the company a large quantity of land, from the sales of which about three millions of dollars would be realized, which, together with other means, would enable them to complete the railroad within two years thereafter, from which the stockholders would receive large dividends. That the stockholders would not have to pay more than one-half the amount of stock, and that that would be received in provisions and labor at the highest prices. But the lands donated are of but little value, and all the means of the company are greatly insufficient to complete the road, and that it cannot be completed by the time stated. That these statements were

relied upon by him when he made the subscription, and induced him to subscribe, but were known by the agent to be untrue. That, in order to induce persons to subscribe, the agent procured one Nelson, an influential man in the neighborhood, to subscribe, whom he represented to be well acquainted with the costs and expenses of such works, giving to him, at the same time, an obligation in writing, that he would release him from his subscription when requested to do so, which pretended subscription was presented to the plaintiff in error by the agent, who stated that it was a *bonâ fide* subscription, when, in fact, the same was merely colorable, and that the subscription sued upon was obtained by these fraudulent means.

To these pleas the defendants in error demurred, and they were held insufficient, and the plaintiff had judgment.

The judgment upon the demurrer to the first plea was manifestly correct; for, though the agent acted without authority of the company in taking the subscription, yet the act was adopted and ratified by the company, as was fully shown by the act of bringing suit upon the subscription. After such an act of ratification, it would not have been within the power of the company to disavow the contract and to deny that the plaintiff in error was entitled to all the privileges of a stockholder. And as the act of ratification appeared by the record, it was competent for the court to notice it in determining the sufficiency of the plea.

The defence set up by the second plea consists of alleged fraudulent representations and acts in several particulars.

First, as to the representations in relation to the value of the lands donated by Congress, they must, from the nature of the subject, have been mere expressions of opinion upon a matter of which the agent could not possibly have any precise knowledge, or anything more than a mere opinion. The means of information were equally accessible to both parties; and the expressions of opinion, however positive, by the agent, cannot, under such circumstances, be considered as a fraud.

The same may be said with respect to the statements in relation to the means of the company to construct the road, the time of its completion, the profits to be derived from it, and the amount of the subscriptions which the stockholders would be required to pay. No reasonable man could ever become a stockholder in such a company,

thereby subjecting himself to pay his subscription, according to its terms and the law which governs it, and according to the charter which he is bound to know, and rely upon such statements of opinion to modify his liability. Such things are to be regarded as reasons which induced him to embark in the enterprise, but are not grounds for avoiding his contract; and, as he has the means of correct information, he cannot complain that he has acted upon erroneous advice.

As to the allegation that the agent stated that subscriptions for stock might be paid in labor or provisions,—even if such an understanding could be incorporated into the contract by the agent,—it is not averred that any performance in that way was offered, or that any damage has been sustained by the plaintiff in error by the refusal of the company to accept that mode of payment.

With respect to the subscription of Nelson, the averments are in substance, that the agent represented to the plaintiff in error that Nelson had become a subscriber. He does not allege that he was thereby induced to subscribe, but merely that Nelson was falsely held out to the community by the agent as a subscriber. This allegation, therefore, appears to be immaterial.

Upon the whole, it appears that he became a subscriber, relying upon opinions expressed to him by the agent, in relation to the resources of the company, the time of completion of the road, and its productiveness as stock to the stockholders. It is not alleged that the company have, by any fraud or neglect, failed to do what it was bound to do, and what was within its power, to complete the road and to make it profitable to the stockholders, or that the plaintiff in error has been deceived in anything which he might reasonably have expected, from becoming a stockholder. He must be presumed to have invested his money in the enterprise subject to all the hazards incident to it, and which a prudent man must necessarily anticipate; and if he has done so upon erroneous or even deceptive opinions in relation to matters open to his inquiry, though expressed by an agent of the company, it is his own misfortune or fault, and he has no right to complain.

Let the judgment be affirmed.