DESHATREAUX *v.* BATSON *et ux.*

(Division B.   Dec. 15, 1930.)

[131 So. 346.   No. 29016.]

**Morris & Wingo,** of Hattiesburg, for appellant.

Currie, Stevens & Currie, of Hattiesburg, for appellees.

**Anderson, J.,** delivered the opinion of the court.

Appellees filed their bill against appellant in the chancery court of Forrest county, to recover damages claimed to have been suffered by them on account of deceit and fraud practiced upon them by appellant in the exchange between the parties of certain lands. Appellant being a non-resident, and owning land in Forrest county in this state, the action was begun by a foreign attachment in chancery. The cause was heard on original bill, answer, and documentary and oral proofs. A final decree was rendered in the cause, granting appellees the relief prayed for in their bill. From that decree appellant prosecutes this appeal.

Appellant owned a lot in the city of New Orleans, on which was a storehouse in which he conducted a grocery business. The lot on which the store is situated is triangular in form, bounded by South Robertson, Felicity, and Terpsichore streets.

Appellees owned land in Forrest county in this state. As the result of negotiations previously had between the parties on the 16th of October, 1929, they exchanged property, appellant conveying to appellees his storehouse and lot and stock of groceries and fixtures in the store-

house, in the city of New Orleans, and appellees conveying to appellant their lands in Forrest county. These conveyances were carried into effect, and consummated by two written contracts entered into between the parties on September 20, 1929, providing for such conveyances.

The two written contracts referred to were, in effect, only one contract; for the obligations undertaken in each were the consideration for the obligations undertaken in the other. In these preliminary contracts appellant's property in New Orleans, and appellees' property in Forrest county in this state, were each valued at eight thousand dollars. Appellant's property, without incumbrances, was valued at $13,600, but there was a mortgage against it of five thousand six hundred dollars, which left its value at eight thousand dollars. In the conveyance from appellant to appellees, the latter, in addition to the mortgage indebtedness, assumed the payment of all paving charges and taxes against the New Orleans property.

A real estate agent, one Ragura, in New Orleans, had appellant's property for sale or exchange, and advertised that fact in a New Orleans paper. Appellees saw the advertisement, and went to New Orleans, to the office of Ragura, where they met appellant—they were strangers —who, with Ragura, showed appellees the property. The latter examined the building, the stock of groceries, and the fixtures in the store; and saw, of course, the size of the lot, and what streets it abutted on. Appellees then returned to their home in Hattiesburg; and a few days thereafter, on Sunday, the 20th of September, 1929, appellant went to Hattiesburg and examined appellees' property, being a guest in their home while there. On that date the two preliminary contracts referred to were entered into. Appellees on the next day, which was Monday, September 21st, took charge of the stock of groceries in New Orleans, and proceeded to sell them.

Appellees charge in their bill that while in New Orleans, looking at appellant's property, appellant falsely

and fraudulently made the following representations: That the stock of groceries in the store was worth from eight hundred to one thousand dollars, when in truth and in fact it was only worth three hundred ninety-one dollars and nineteen cents; that the paving charges against the property on Felicity and Terpsichore streets were not more than two thousand dollars, when in truth and in fact such charges were three thousand two hundred dollars; that the fixtures in the grocery store were worth not less than two thousand three hundred dollars, when in truth and in fact they were only worth one thousand two hundred dollars; that the taxes against the property would not be over two hundred dollars, when in truth and in fact they were two hundred sixty-four dollars. Appellees sued for the difference between these amounts, and the court so decreed.

Appellant contends that, conceding the chancellor was justified in his finding of facts, nevertheless, under the law, appellant was entitled to a decree dismissing the bill; in other words, that the chancellor misapplied the law to the facts proved.

Appellant and appellees were strangers; appellees made a trip to New Orleans to examine appellant's property; they did examine it; they went through the store, and looked at the stock of groceries, and the fixtures in the store. They did this, of course, to see what was there, and to ascertain, as near as they could, its value. But they were not willing to stand on their own judgment as to the value of the lot and building, nor on the judgment and representations of appellant as to its value; they employed an appraiser in New Orleans to value them. The appraiser did so. Appellees saw the size of the lot, and the three streets on which it abutted. Appellees, who were the only witnesses in their own behalf, testified to these facts.

And appellant was not willing to take appellees' representations as to the value of their property in Forrest

county, and made a trip to examine it for himself, and relied on his own judgment as to its value.

Taking every material fact to be true which appellees' evidence either established or tended to establish, their case was simply this: The real estate agent, Ragura, who was doing the talking for the appellant, stated that the stock of groceries was worth from eight hundred to one thousand dollars; that the paving costs would not be over two thousand dollars; that the taxes against the property would not exceed two hundred dollars; and that the fixtures in the store were worth two thousand three hundred dollars. When the truth was that the stock of goods was worth only three hundred ninety-one dollars and nineteen cents, the paving charges were three thousand two hundred dollars, the taxes were two hundred sixty-four dollars, and the fixtures were only worth one thousand two hundred dollars; and Ragura knew those representations to be false when he made them.

Appellees testified that they relied on these representations made by the real estate agent, Ragura, in the presence of appellant, who was dull of hearing, and seems not to have said much. They testified, further, that they had had no experience in the mercantile business, and knew nothing of the value of the stock of groceries, nor of the fixtures in the store. The question is whether those facts, undisputed, made a case for appellees under the law. We think the question must be answered in the negative.

The general rule is that a person has no right to rely on representations as to value; he is required to exercise his own judgment as to value. It is an act of folly on his part to accept the other person's statement in that respect. Such statements are usually mere expressions of opinion, or judgment, which will not excuse the other party's failure to make an examination for himself for the purpose of ascertaining the real facts. This is especially true where the relation of the parties are naturally antagonistic, such as buyer and seller. Where the means

of information are equally accessible to both parties, expressions of opinion, however positive, by one of the parties, cannot be considered as a fraud upon the rights of the other. Anderson v. Burnett, 5 How. 165, 35 Am. Dec. 425; Bell v. Henderson, 6 How. 311; Anderson v. Hill, 12 Smedes & M. 679, 51 Am. Dec. 130; Walker v. M. & O. R. Co., 34 Miss. 245; 26 C. J., p. 1215, par. 110; 12 R. C. L., p. 381, par. 132. The Walker case is especially illuminating on this question. Walker subscribed for stock in the Mobile & Ohio Railroad Company, to be paid for in installments; he failed to pay the installments, and the railroad company sued him on his subscription contract. Among other defenses, Walker interposed the following plea:

"That the agent who obtained the subscription, with the fraudulent design of obtaining the same, represented to the plaintiff in error that the Congress of the United States had donated to the company a large quantity of land, from the sales of which about three millions of dollars would be realized, which, together with other means, would enable them to complete the railroad within two years thereafter, from which the stockholders would receive large dividends. That the stockholders would not have to pay more than one-half the amount of stock, and that that would be received in provisions and labor at the highest prices. But the lands donated are of but little value, and all the means of the company are greatly insufficient to complete the road, and that it cannot be completed by the time stated. That these statements were relied upon by him when he made the subscription, and induced him to subscribe, but were known by the agent to be untrue. That, in order to induce persons to subscribe, the agent procured one Nelson, an influential man in the neighborhood, to subscribe, whom he represented to be well acquainted with the costs and expenses of such works, giving to him, at the same time, an obligation in writing, that he would release him from his subscription when requested to do so, which pretended subscription

was presented to the plaintiff in error by the agent, who stated that it was a bona-fide subscription, when, in fact, the same was merely colorable, and that the subscription sued upon was obtained by these fraudulent means.''

The railroad company demurred to the plea, the trial court sustained the demurrer, and the judgment was affirmed by the supreme court. In the opinion, addressing itself to that plea, the court said:

''First, as to the representations in relation to the value of the lands donated by Congress, they must, from the nature of the subject, have been mere expressions of opinion upon a matter of which the agent could not possibly have any precise knowledge, or anything more than a mere opinion. The means of information were equally accessible to both parties; and the expressions of opinion, however positive, by the agent, cannot, under such circumstances, be considered as a fraud.

''The same may be said with respect to the statements in relation to the means of the company to construct the road, the time of its completion, the profits to be derived from it, and the amount of the subscriptions which the stockholders would be required to pay. No reasonable man could ever become a stockholder in such a company, thereby subjecting himself to pay his subscription, according to its terms and the law which governs it, and according to the charter which he is bound to know, and rely upon such statements of opinion to modify his liability. Such things are to be regarded as reasons which induced him to embark in the enterprise, but are not grounds for avoiding his contract; and, as he has the means of correct information, he cannot complain that he has acted upon erroneous advice. . . .

''With respect to the subscription of Nelson, the averments are in substance, that the agent represented to the plaintiff in error that Nelson had become a subscriber. He does not allege that he was thereby induced to subscribe, but merely that Nelson was falsely held out to

the community by the agent as a subscriber. This allegation, therefore, appears to be immaterial.

"Upon the whole, it appears that he became a subscriber, relying upon opinions expressed to him by the agent, in relation to the resources of the company, the time of completion of the road, and its productiveness as stock to the stockholders. It is not alleged that the company has, by any fraud or neglect, failed to do what it was bound to do, and what was within its power, to complete the road and to make it profitable to the stockholders, or that the plaintiff in error has been deceived in anything which he might reasonably have expected, from becoming a stockholder. He must be presumed to have invested his money in the enterprise subject to all the hazards incident to it, and which a prudent man must necessarily anticipate; and if he has done so upon erroneous or even deceptive opinions in relation to matters open to his inquiry, though expressed by an agent of the company, it is his own misfortune or fault, and he has no right to complain."

Appellees, however, contend that the facts of this case come under an exception to the general rule, one of the exceptions being representations as to the value, where such misrepresentations are coupled with concealment of material facts, or where made with artifice, to prevent the other party from learning the truth, especially if the speaker professes personal knowledge that his statements are correct; or where the speaker obviously knows or intends that his hearer will rely upon his representations of value because the hearer has expressly told him so; or where the parties deal upon unequal terms, where the facts are peculiarly within the knowledge of the speaker, and difficult for the hearer to ascertain. Appellees refer to 26 C. J., page 1217, where the exceptions to the general rule are laid down.

We do not think that the facts of this case bring it within any exception to the general rule. There was no relation of trust or confidence between these parties—

they evidently were dealing at arm's length. There is nothing in the evidence tending to show that either appellant or the real estate agent, Ragura, said or did anything to prevent appellees from themselves investigating and ascertaining the value of the stock of groceries, and of the fixtures in the store, and of the amount of taxes and paving charges against the property. Appellees were in New Orleans at the time. All they had to do was to go and find out from the proper authorities the amount of taxes and paving charges; and, if they wished to be certain as to the value of the stock of goods and fixtures, they should have taken the necessary steps to ascertain the same, as they did with reference to the value of the storehouse and lot.

The representations made by appellant show on their face that they were expressions of opinion as to values. Appellees knew that naturally appellant would try to make the impression that his property was very valuable —would put as high a value on it as he could with any show of reason. And naturally and reasonably, appellees likewise represented the value of their property. All this was just trade talk, and not inconsistent with good faith.

It follows from these views that the chancellor erred in his application of the law to the facts.

Reversed and dismissed.