WHITE *et al. v.* STEWART.

(Division A. Feb. 6, 1933. Suggestion of Error Overruled Mar. 6, 1933.)

[145 So. 747. No. 30186.]

Ernest P. Jones, Jr., of Jackson, for appellants.

**W. M. Snyder,** of Jackson, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

The appellee purchased from the appellants corporate stock issued by Baird's Television, Inc., paying a part of the price therefor in cash, and giving three promissory notes for the remainder. She afterwards repudiated the contract of sale, and sued the appellants for the money paid them and for a return of the notes given by her or their value. The ground of her complaint is that the stock was sold to her in violation of the Blue Sky Law, section 4178 et seq., Code 1930, and that she was induced to purchase it by means of a fraudulent representation and promise.

The case was tried on bill, answer, and proof, and the decree was in accordance with the prayer of the bill.

The facts disclosed by the evidence are substantially as follows: The appellants, co-partners under the name of

H. L. Barksdale & Co., are or were doing business as brokers at Jackson, Mississippi, and were engaged in the purchase and sale of corporate stock, bonds, and other securities. The appellee purchased from them two hundred shares of the stock of Baird's Television, Inc., a foreign corporation. The sale to the appellee was made on three written orders for the stock, given at different times, addressed to the appellants, and signed by the appellee—two for fifty, and one for one hundred shares of the stock. These orders, after being signed by the appellee, were delivered to the appellants by one Linsky, acting as agent for either the appellants, or the appellee, it is immaterial which, as will hereinafter appear. One of the orders reads as follows:

"Purchasing Order.

"H. L. Barksdale & Co.

"103-104 Lampton Bldg.,

"Jackson, Mississippi.                    July 17, 1931.

"You are hereby authorized to deliver or purchase for my account and deliver to me 50 shares of the Baird's Television, Inc. and I am handing you herewith settlements as follows: Checks for $250.00—Note $250.00 due Dec. 1/31. It is understood and agreed that the above stock is to be delivered to me when all payments have been duly made and no other agreements or conditions other than is written in this contract shall be binding on either of us.

"Name: Mary Helen Stewart.

"Address: Madison, Miss.

"Witness: H. H. Linsky."

The other two orders differed from this one only as to the date, number of shares, the use of the word "cash" for checks, and in the amount thereof, and of the notes.

Baird's Television, Inc., is a going concern, with all of its authorized capital paid up, but its stock has little, if any, market value. It is not shown to have sold, or offered for sale, any of its corporate stock, in this state.

The particular stock here in question was purchased by the appellants, from a man named Bradford, who purchased it either in New York or London. The stock was set aside for the appellee by the appellants on these orders. The certificates therefor issued by Baird's Television, Inc., were attached to the notes given by her, and the notes were thereafter sold and delivered by the appellants to another with the certificates of stock attached thereto.

Neither Baird's Television, Inc., the appellants, nor Linsky, had complied with any of the provisions of the Blue Sky Law. The evidence of fraud in the procurement of these orders for stock by Linsky is embraced in the following questions and answers:

"Q. At the time when you bought this last Television stock, did you further make an agreement with the representatives of Barksdale & Co., who sold it to you?

"A. He made an agreement with me—he proposed to sell the stock for me—he said he would sell this stock for me in November—said he would sell it for me after November 18th, 1931, for twice what I paid for it, or $20.00 per share. Said, 'We have the dope that the stock will be worth $20.00 per share when the stock was listed in November, and he could sell it for me at that time for $20.00 per share, thus making a quick turn over of it'—

"Q. Read off the receipt he gave you at the time to the court.

"A. 'Recd. of Miss Mary Helen Stewart $500.00 cash— 500.00 note due Jan. 15, 1932 for 100 shares of Baird's Television Inc.—Will sell same at $20.00 per share after listing Nov. 18, 1931—total $2000.00

" 'H. L. Barksdale & Co.
" 'H. H. Linsky.' "

The appellee did not specifically state that she relied on this representation as to the value of the stock, or on the promise to sell it, in giving the orders therefor,

and the making of the representation and promise was not communicated by Linsky to the appellants.

It is not clear from the appellee's brief whether she counts the alleged fraud as a ground for recovery, independent of the alleged violation of the Blue Sky Law; but we will decide the case on the theory that she does. Two questions are then presented:

(1) Is the appellee entitled, under the Blue Sky Law, to disaffirm the contract and recover the amount paid, and the notes or their value given, the appellants for the stock? If not, then,

(2) Is she entitled so to do because of the alleged representation and promise?

The Blue Sky Law, section 4179, Code of 1930, defines an "investment company" as any person, corporation, etc., foreign or domestic, which "shall either himself, themselves or itself, or by or through others, sell or negotiate for the sale of any stocks, bonds or other securities issued by him, them or it, within the state of Mississippi." Other sections provide what an investment company shall do before selling its stock and other securities in this state. Section 4188 designates one who sells or offers for sale stocks and other securities of an investment company as a "dealer," and prohibits him from acting as such unless and until he complies with certain requirements of the statute. Section 4197 thereof makes any violation of the statute a misdemeanor punishable by a fine or imprisonment, or both.

One of the appellee's contentions is that a right of action against the appellants is given her by section 4186, but there can be no merit in this. That section applies only to suits against investment companies that have complied with the Blue Sky Law, and, moreover, the appellants are not an investment company, but are brokers, selling stock, bonds, and other securities not issued by them, but by others. The section of the statute within

which appellants must be brought in order for the statute to apply to them is section 4188, which defines and regulates dealers in securities issued by investment companies.

It becomes necessary, therefore, for us to answer the question, Is Baird's Television, Inc., an investment company within the meaning of the statute? The answer thereto must be in the negative, for, as hereinbefore appears, the evidence does not disclose that Baird's Television, Inc., sold or offered for sale any of its stock or other securities, "within the state of Mississippi." What does appear from the evidence is that the appellants sold stock of which they were the absolute owners, issued by a corporation not shown to be an investment company, within the meaning of the statute. Such sales are not prohibited by the Blue Sky Law. Gutterson v. Pearson, 152 Minn. 482, 189 N. W. 458, 459, 24 A. L. R. 519.

This brings us to the fraud of which Linsky is alleged to have been guilty. We will assume, in this connection, that Linsky acted as the agent of the appellants in obtaining the orders for stock. The fraud charged may be separated into two elements: (1) The representation that the stock would be worth twenty dollars per share in November; and (2) that the appellants would sell the stock in November for the appellee for twenty dollars per share, double the price the appellee paid, or agreed to pay them therefor. These elements will be separately considered.

1. We will leave out of view the fact that the alleged fraudulent representation was not made in connection with the procurement of the first two orders for the purchase of the stock, but only when the last order therefor was procured; and also that the appellee failed to testify that she relied on the representation in purchasing the stock; in which connection, see A. L. I. Rest. Cont., section 479.

We will assume that the representation was made for the purpose of inducing the appellee to purchase the

stock; and, further, that it referred to a matter of which the appellee was without, and could not have easily obtained, knowledge. The representation, however, was, and must have been understood by the appellee as, only an expression of an opinion on a matter not involving expert knowledge, and therefore was not fraudulent or material, unless it "varied so far from the truth that no reasonable man could have such an opinion." A. L. I. Rest. Cont., section 474. Such does not here appear. Compare Deshatreaux v. Batson, 159 Miss. 236, 131 So. 346.

If the statement made by Linsky that, "we have the dope," implies that he was in possession of facts justifying the opinion, then it must appear that he was in possession of no facts on which to base the opinion; or if he was in possession thereof, such facts must be made to appear, and to be such that the opinion purporting to be based thereon was such that no reasonable man could have entertained it. The evidence is silent in both of these particulars.

2. The appellee's contention as to the promise to sell the stock seems to be that the promise was made with no intention of performing it, and we will assume that, in so far as Linsky is concerned, the evidence so discloses. Three questions then arise:

First. Is the promise within the rule that "a contractual promise, made with the undisclosed intention of not performing it is fraud"? A. L. I. Rest. Cont., section 473; Gross v. McKee, 53 Miss. 536.

Second. If the promise was fraudulent within that rule, then should the appellee be presumed, though the evidence is silent thereon, to have been induced thereby to purchase the stock; in connection with which, see A. L. I. Rest. Cont., section 479.

Third. What effect, if any, should be here given to the provision of the purchasing orders that "it is understood and agreed that . . . no other agreements

or conditions other than is written in this contract, shall be binding on either of us"?

The conclusion we have reached as to the last of these questions renders it unnecessary for us to express an opinion on the other two.

The rule in this court, in consonance with the weight of authority, is that a written contract, procured by an agent, to be afterwards approved by his principal, stipulating that it covers all agreements between the parties relative to the subject-matter of the contract, in the absence of a statute to the contrary, excludes any agreement by the agent relative to the subject-matter not embraced therein, withdraws from the agent the authority to make such, and prevents his principal from being affected by the fraudulent making by the agent of an agreement not set forth in the contract, and not communicated to his principal. Colt v. Odom, 136 Miss. 651, 101 So. 853; Colt v. McCullough, 141 Miss. 328, 105 So. 744; Junius Hart Piano Co. v. Stewart, 145 Miss. 488, 111 So. 106; Stevens v. Stanley, 153 Miss. 801, 121 So. 814.

The decree of the court below will be reversed, and the bill of complaint will be dismissed.

Reversed, and bill dismissed.