WALTER J. GUTTERSON v. F. E. PEARSON AND OTHERS.[1]

July 7, 1922.

No. 22,871.

**Blue Sky Law not applicable to sale of stock by its absolute owner.**

1. The so-called Blue Sky Law does not prohibit a person who is the absolute owner of stock issued by a company which does not, either itself or through others, engage in the business within this state of selling its stock or securities, from selling such stock.

**Courts cannot extend penal statutes to include cases omitted by the legislature.**

2. This is a penal statute and cannot be extended by the courts to include cases omitted by the legislature.

**Owner of stock not affected by amendment to statute.**

3. Section 6A, added by a subsequent act, does not bring such an owner within the prohibitory provisions of the other sections of the act.

Action in the district court for Hennepin county to enjoin the State Securities Commission from interfering with the sale, within the state of Minnesota, by appellant of the preferred or common stock of the New England Cereal Company and for other relief. From an order sustaining defendants' demurrer to the complaint, Montgomery, J., plaintiff appealed. Reversed.

*Johnson & Watson* and *Ernest J. Schrader*, for appellant.

*Clifford L. Hilton*, Attorney General, and *Montreville J. Brown*, Assistant Attorney General, for respondents.

[1]Reported in 189 N. W. 458.

TAYLOR, C.

Plaintiff is engaged in the business of buying and selling stocks, bonds and other securities and has a dealer's license issued by the State Securities Commission. He had purchased outright and owned absolutely thirty thousand shares of the capital stock of the New England Cereal Company for which he paid the sum of $50,000 and was about to sell this stock in the usual course of business when the securities commission took steps to prevent him from doing so on the ground that the so-called Blue Sky Law prohibited him from selling it without first securing the approval of the commission, and announced that such approval would not be given until the property and business affairs of the cereal company had been investigated and that he must defray the expense of such investigation. Thereupon plaintiff brought this action to enjoin the commission and its members from preventing him from selling this stock and in his complaint set forth the facts in full. An appeal from an order sustaining a demurrer to the complaint brings the matter before this court.

The New England Cereal Company is a Connecticut corporation which has never sold or offered for sale within the state of Minnesota any of its stock, bonds or other securities; and plaintiff contends that the so-called Blue Sky law does not apply to such a company, nor to a person who merely sells the stock in such a company which he has purchased outright and has paid for in full and owns absolutely.

The statute in question is chapter 429, p. 635, of the Laws of 1917, as amended by chapters 105 and 257, pp. 99, 263, of the Laws of 1919. The minor amendments of 1921 made no change in the provisions bearing on the present controversy. Section 1 of the act creates a State Securities Commission. Section 2 provides that the act shall not apply to the several classes of securities therein enumerated. Section 3 defines an investment company, for the purpose of the act, in the following language:

"Every person, firm, co-partnership, corporation, company or association * * * whether unincorporated or incorporated, under the laws of this or any other state, territory or government, which

shall either himself, themselves or itself, or by or through others engage in the business within the state of Minnesota of selling, offering or negotiating for the sale of any stocks, bonds, investment contracts or other securities, herein called securities (except those exempt under the provisions of this act) issued by him, them or it, except to a bank or trust company, shall be known, for the purpose of this act, as an investment company."

This same section defines a dealer, for the purpose of the act, as follows:

"Every person, firm, co-partnership, company, corporation or association, whether unincorporated or incorporated under the laws of this or any other state, territory or government, not the issuer, who shall within the state of Minnesota sell or offer for sale any of the stocks, bonds, investment contracts, or other securities, herein called securities, issued by an investment company, except the securities specifically exempt under the provisions of this act, or who shall by advertisement or otherwise profess to engage in the business of selling or offering for sale such securities within the state of Minnesota, shall be known for the purpose of this act as a dealer. The term dealer shall not include an owner, not issuer, of such securities so owned by him when such sale is not made in the course of continued and successive transactions of a similar nature, nor one who in a trust capacity created by law lawfully sells any securities embraced within such trust."

Section 4 provides:

"No such investment company and no such dealer shall sell or offer for sale any such securities or profess the business of selling or offering for sale such securities, unless and until he or it shall have been licensed by the commission as herein provided."

Section 4 then provides for licensing and registering such investment companies and dealers, for revoking such licenses and for suspending such licenses as to specific securities.

Section 5 relates to the disposition to be made of the fees received and creates a revolving fund available for expenses.

Section 6 requires every investment company or dealer, before advertising or offering any such securities for sale, to notify the commission of its intention to do so and to furnish the commission with a full description of such securities and with true copies of all advertising matter.

Section 7 authorizes the commission to make investigations as to the promotion or sale of any such securities, and as to the property and business affairs of such investment companies.

Section 8 gives the commission power to limit the price at which securities may be sold by an investment company or dealer and the amount which may be paid for promotion services, commissions and expenses; and to require investment companies and dealers to furnish information under oath; and to suspend the license of an investment company or dealer in respect to the sale or promotion of a specified security.

Section 9 provides that if the commission finds the proposed plan of an investment company or its proposed securities to be of a nature to work a fraud on the purchaser or to constitute a violation of the act or of other statutes therein specified, the commission shall notify the investment company or dealer and suspend its license with respect to the promotion or sale of such securities.

Other sections of the act make a violation of any of its provisions, or of any lawful order of the commission, or of any condition imposed by the license, a gross misdemeanor punishable by fine, imprisonment or both.

An "investment company," as defined in section 3, is one which either itself or through others engages in the business within this state of selling or offering for sale securities issued by itself. A "dealer," as defined in that section, is one, not an issuer, who within this state sells or offers for sale securities issued by an "investment company." Section 4 prohibits any "such investment company" and any "such dealer" from selling or offering for sale "any such securities" until licensed by the commission as therein provided. These prohibitory provisions do not purport to apply to an issuer of securities, unless such issuer be an "investment company" as defined in section 3 nor to one, not an issuer, who buys and sells securities

unless he be a "dealer" as defined in that section. It stands admitted that the New England Cereal Company has never, in any manner, sold securities or offered them for sale within the state of Minnesota, and consequently that company is not an "investment company" within the purview of the statute. As the company which issued the securities offered for sale by plaintiff is not an "investment company" within the meaning of the statute, selling such securities or offering them 'for sale did not make plaintiff a "dealer" within the meaning of the statute, nor bring him within the prohibitory provisions of section 4. Defendants do not contend that the statute, taken as it reads, applies to plaintiff, but urge that unless it be construed or extended so as to bring within its provisions those dealers who handle securities issued by companies which do not themselves operate within this state, the act can be easily evaded and will fail to accomplish the legislative purpose. Referring to section 3 defendants say in their brief:

"It is obvious that a literal interpretation of the language of this section would result in a defeat of the object sought to be attained by the legislature. In such a situation there must be a departure from literal interpretation; we must so construe the section as to bring it in harmony with the purpose and intent of the act. Words may be eliminated or particular terms given an extended or qualified meaning; this, that the act may be potent to eradicate the mischief aimed at, and to avoid a construction which would result in absurdities."

In order to extend the scope of the statute so as to include within its operation those who sell securities issued by a company which does not itself sell its securities within this state, they urge that the words, "within the state of Minnesota," in the paragraph of section 3 which defines investment companies should be either eliminated or transposed from that section to section 4. If the legislature had done this we might be able to give the statute the broad scope contended for. But this is a highly penal statute, and the courts cannot extend a penal statute to take in those whom the legislature has left out, nor so as to make acts criminal which the legislature has

not declared to be criminal. Statutes creating crimes must speak for themselves, and cannot be extended by construction to include cases which are clearly outside the statute as enacted by the legislature.

In State v. Finch, 37 Minn. 433, 34 N. W. 904, the defendant was charged with violating the law regulating the sale of illuminating oil. In holding that the statute did not prohibit the acts complained of the court said [at page 434]:

"This law relates to conduct which is not criminal or wrongful unless it has been made so by this statute. In construing such statutes, we should be careful to distinguish between what may have been desirable in the enactment in order that it should effectually accomplish its purpose, and what has been really prohibited or commanded by it. Before conduct hitherto innocent can be adjudged to have been criminal, the legislature must have defined the crime, and the act in question must clearly appear to be within the prohibitions or requirements of the statute, that being reasonably construed for the purpose of arriving at the legislative intention as it has been declared. It is not enough that the case may be within the apparent reason and policy of the legislation upon the subject, if the legislature has omitted to include it within the terms of its enactments. What the legislature has from inadvertence or otherwise omitted to include within the express provisions of a penal law, reasonably construed, the courts cannot supply."

After referring to the situation disclosed in that case the court further said [p. 436]:

"The case may be within the reason of the prohibitory law, but it is not within its terms; and the court cannot extend the statute so as to include and make criminal what the legislature has not declared to be so."

In State v. Walsh, 43 Minn. 444, 445, 45 N. W. 721, it is said:

"A statute is not to be deemed to make an act criminal, which would not have been so except for the statute, unless the intention of the legislature to effect that result is apparent, and not seriously doubtful; and if, applying the proper principles of construction to

ascertain the intention of the legislature expressed in the law, it remains fairly doubtful whether it was intended to embrace acts or conduct like that under consideration, such acts or conduct must be regarded as not within the statute."

In Berg v. Baldwin, 31 Minn. 541, 542, 18 N. W. 821, which involved a statute imposing treble damages, it is said:

"This statute is highly penal and should receive the strictest construction, and not be extended to cases not within its spirit as well as letter."

In Mahoney v. Maxfield, 102 Minn. 377, 378, 113 N. W. 904, 14 L. R. A. (N. S.) 251, 12 Ann. Cas. 289, it is said:

"While the language of the statute must be construed to effect the purpose of the legislature, it should not, in view of the fact that a violation is made a misdemeanor, be extended beyond its evident purport."

The rule is so thoroughly settled that there is little need to cite authorities. In addition to the above see State v. Small, 29 Minn. 216, 12 N. W. 703; Street v. Chicago, M. & St. P. Ry. Co. 124 Minn. 517, 145 N. W. 746; Bollinger v. Wilson, 76 Minn. 262, 79 N. W. 109, 77 Am. St. 646; Price v. Denison, 95 Minn. 106, 103 N. W. 728; Wardwell v. Cameron, 126 Minn. 149, 148 N. W. 110; 25 R. C. L. 1081, § 301, and the numerous cases there cited.

The statute in question is plain and explicit and leaves no room for construction. In unmistakable language the legislature has pointed out those to whom it applies; and, if the statute is too limited in its scope to accomplish the purpose intended, the remedy must come from the legislature. Only the legislative power can make acts criminal which are lawful until declared criminal. The courts cannot extend penal statutes beyond the limits fixed by the legislature.

It may be proper to note that chapter 257, p. 263, Laws of 1919, added to the act a new section designated as 6-A, and directed that it be placed between sections 6 and 7. This section makes it a misdemeanor to circulate "any printed or written matter containing an

offer of, or a soliciation to purchase" securities of any kind, not exempt under the terms of the act, "unless such offer of, or solicitation to purchase" such securities "shall have been approved by the commission." The provisions of this section are not limited to "investment companies" and "dealers," unless by implication, and may, perhaps, apply to all who circulate such printed or written matter. But the acts and claims of defendants are not predicated upon and cannot be sustained under this section. If plaintiff has violated this restriction, it will not bring him within those provisions of the act which defendants are enforcing against him, but may subject him to prosecution under this section.

Of course if the issuer of securities and the ostensible purchaser are acting collusively for the purpose of evading the statute, and such purchaser sells such securities in this state, it will bring both issuer and purchaser within the operation of the statute, but that is not the situation presented in this case.

Our conclusion is that selling the stock in question does not bring plaintiff within the purview of this act and that the order appealed from must be reversed. It is so ordered.