## STATE v. E. H. EVANS AND ANOTHER.[1]

December 29, 1922.

No. 23,120.

**Definition of "investment contract" under Blue Sky Law.**

1. An investment contract, under the state "Blue Sky Law," is a contract providing for the investment of capital in a way intended to secure income or profit from its employment. The contract set out in the opinion is an investment contract within the rule.

**Indictment sufficient in charge of sale of investment contract.**

2. An indictment charging the sale of an investment contract to C on June 6, charging that said contract had been issued by an investment company, setting out the contract, which bears date June 6, with C as grantee, charges a sale to C of a contract issued to him on its sale, and is not void as a charge of a sale to C of a contract he already owned.

[1]Reported in 191 N. W. 425.

Subject matter of statute shall be within the limits expressed in the title—
use of word "securities".

3. Under the state Constitution, a statute may only include legislation which, by fair intendment is germane to the subject expressed in its title. What is necessary is that the title shall apprise members of the legislature of the contents of the act. A title to a legislative act as "an act to prevent fraud in the sale and disposition of stocks, bonds or other securities" is broad enough to cover legislation affecting investment contracts.

Term investment contract not too vague to indicate what is forbidden.

4. Before a man can be punished, his case must be plainly within the statute which is invoked to make his act a crime. The term "investment contract" is not so vague as to be insufficient to apprise citizens of what acts it is their duty to avoid.

Defendants were indicted by the grand jury of Hennepin county charged with the crime of selling an investment contract without a license and defendants' demurrer to the indictment was overruled by Waite, J., in the district court of that county. From the order overruling their demurrer, defendants appealed. Affirmed.

*Powell, Carman & Cain* and *Burnquist & Jackman,* for appellant.

*Clifford L. Hilton,* Attorney General, *Montreville J. Brown,* Assistant Attorney General, and *Floyd B. Olson,* County Attorney, for respondent.

HALLAM, J.

Defendants were indicted for selling an investment contract without a license from the State Securities Commission, contrary to the provisions of the so-called "Blue Sky Law," chapter 429, p. 635, Laws 1917, as amended by chapter 105, p. 99, Laws of 1919. Defendants demurred to the indictment. The court overruled the demurrer and certified these questions to this court:

1. Does the indictment in this case state facts sufficient to constitute a public offense?

2. Is the written instrument set out in the indictment to be construed as an investment contract within the meaning of chapter 429, of the General Laws of Minnesota 1917, as amended?

3. Is the title of the said act constituting chapter 429, of the General Laws of Minnesota 1917, as amended by chapter 105 of the General Laws of Minnesota 1919, sufficiently comprehensive to include and constitutionally to bring within the scope of the act the written instrument set out in the indictment?

The allegations of the indictment are that the U. S. I. Realty Company was a Minnesota corporation engaged in the business of selling investment contracts issued by it, and that on the sixth day of June, 1921, defendant without such license sold to Homer L. Clary "an investment contract, which said investment contract had been issued by said U. S. I. Realty Company * * * and which said investment contract is and was in words and figures as follows:" The contract is then set out in full. It is dated June 6, 1921. By its terms, the company, in consideration of the payment of the contract fee of $25, and of "the covenants and agreements herein contained," agreed to sell to Clary the "west one-half (W½) of tract One (1), Block Nine (9), Live Bee Land Subdivision No. 2" in the county of Live Oak, state of Texas, for $2,500, payable in monthly instalments of $25 each. The quantity of land is not stated. There is no express obligation on the part of Clary to pay nor to buy. There are none of the usual provisions for furnishing an abstract of title or for examination of title. So far, it is a short form of option for the sale of land. The contract provides that it is made "subject to the options, privileges, terms and conditions printed hereon and made part thereof." These are many times longer than the main contract itself. In substance the essential sections provide:

1. If the purchaser shall make no payment for three consecutive months, the company may, by notice, terminate the interest of the purchaser in the real estate described, but the purchaser shall have the right to resume payment and be reinstated in his interest in the land, if not sold, or to select other land owned and for sale by the company, at its regular list price.

3. At any time after six months, by mutual consent, the purchaser may surrender all interest in the land described, and the company will purchase other real estate for him.

4. The company agrees that as long as the purchaser has the right to surrender the real estate purchased and to demand that the company purchase other real estate, as provided in section 12, it will expend and use for the benefit of the purchaser, money in an amount equal to all money paid to it, less certain deductions, and with accrued interest, which amount shall be considered as payments on the principal on options contained in sections 3, 6 and 11.

5. Provision is made for extension of time in case of sickness, loss of employment, or other misfortune.

6. Provision is made for the option to surrender the contract and return of full amount paid, in event of death of purchaser within three years from date of contract.

7. Should the purchaser not desire to retain the land described, or to have the company purchase other real estate as provided in section 12, he may surrender his contract and receive the amount paid in with a bonus of $70 for each $1,000, from the profits obtained on sale of contracts on which the company is prepared to purchase other real estate as provided in section 12.

11. The company guarantees that when 50 regular monthly payments have been made on the contract, it will, upon surrender thereof, purchase real estate as provided in section 12 for the face value thereof upon receiving a mortgage for the balance, if in the meantime the company has not offered to purchase other real estate, and the purchaser has not availed himself of any other privilege herein contained.

12. If the purchaser shall exercise his right and option contained in sections 3 or 11, the company hereby agrees that an amount equal to the face value hereof, in accordance with the terms of this contract, will be used for the purchaser for either of the following purposes, viz.: To buy a home; to build a home; to buy a farm; to improve a farm; to buy business property; to improve business property; to pay off a mortgage. Or the company will loan said sum for any other purpose upon improved, satisfactory, unencumbered real estate security. Then follows provision for a mortgage,

indemnity against liens, insurance, abstract, examination thereof and recording.

1. The statute makes it an offense for any person to "sell or offer for sale any of the stocks, bonds, investment contracts or other securities * * * issued by an investment company," except certain securities specifically exempted from the provisions of the act, without a license from the State Securities Commission. Defendant contends this contract does not come under "stocks, bonds, investment contracts or other securities." The state contends that it is an investment contract. The term "investment contract" is no where defined in the act. In State v. Gopher Tire & Rubber Co. 146 Minn. 52, 56, 177 N. W. 937, the court said: "The placing of capital or laying out of money in a way intended to secure income or profit from its employment, is an investment as that word is commonly used and understood," and it was held in substance that if the defendant issued and sold its certificates to purchasers who paid their money, justly expecting to receive an income or profit from the investment, such certificates might properly be regarded as "investment contracts or securities." We adhere to this construction of the statute.

We think the contract before us in this case is an investment contract. It gives an option to purchase a piece of land in Texas, but also gives other options. It gives, under certain conditions, an option to the purchaser to surrender his contract and receive back the money he has paid with a bonus, and after 50 regular monthly payments have been made, if other options have not been exercised, it gives the absolute right to apply the amount paid, with interest, to buy or build a home, to buy or improve a farm or to buy or improve business property, and, if the amount accumulated is not sufficient therefor, the company agrees to advance the balance so long as the property shall afford reasonable security. It is plain that the exercise of some of these options converts the contract into one for the laying out or investment of money in a way intended to secure income or profit from its employment. No doubt, to the ordinary certificate purchaser living in Minnesota, these options would be more attractive than an option to purchase a tract of land,

undescribed in amount, in "Live Bee Land Subdivision No. 2," in Live Oak county, Texas, without provision for examination of the land or its title. We are of the opinion that this contract is an investment contract within the statute.

The little assistance we get from decided cases points to this same conclusion. In State v. Agey, 171 N. C. 831, 88 S. E. 726, a company engaged in the business of selling small lots of land with payments extending over a term of years with obligation on the part of the company to plant and cultivate fruit trees thereon was held to be an "investment company" within the North Carolina statute, and in Standard Home Co. v. Davis, 217 Fed. 904, the term "Building contracts, loan investments or other securities," as used in the Arkansas statutes, was held to embrace loans made by a building and loan association payable in monthly instalments.

2. The indictment charges that defendant "did sell and deliver to one Homer L. Clary an investment contract, which said investment contract had been issued by said U. S. I. Realty Company." The contract is set out in the indictment and Homer L. Clary is named as grantee. Defendants argue from this that the indictment charges the sale to Clary of a contract which he already owned, and that it is therefore bad. We cannot sustain this contention. The contract described is dated on the same day as the sale is alleged to have been made. The indictment is not well worded, but its plain intent is to allege that defendants made the sale of the contract set out, which ,upon sale, was issued by the company to Clary. It is not to receive the meaningless construction that defendants sold it to Clary after it was his own. Defendants were sufficiently charged with a sale as dealers within the meaning of the statute.

The title of the act of 1917 is "An Act to prevent fraud in the sale and disposition of stocks, bonds or other securities * * *."

Defendants contend that this title is not broad enough to cover legislation affecting an investment contract such as this, and that, insofar as it covers such contracts, it violates the constitutional provision which requires that the subject of the act "shall be expressed in its title." Section 27, art. 4, state Constitution.

Clearly the subject matter of a statute must be confined within the limits of the subject expressed in the title. Yet the title was never intended to be an index to the law. All that is required is that the act shall not include legislation which, by fair intendment, cannot be considered germane to the one subject expressed in the title. The main object of the constitutional provision is to apprise the members of the legislature of the contents of the act, to the end that they may not vote unwarily. If the title is such as to fairly apprise them of the general character of the enactment, it is sufficient. The generality of the title is no objection, provided only it is sufficient to give notice of the general subject of the proposed legislation and of the interests to be affected. State v. Cassidy, 22 Minn. 312, 21 Am. Rep. 765; Johnson v. Harrison, 47 Minn. 57, 50 N. W. 923. The question is whether the term "stocks, bonds, or other securities" is broad enough to fairly apprise the members of the legislature of legislation on the subject of "stocks, bonds, investment contracts or other securities." We think it is. As said in State v. Gopher Tire & Rubber Co. 146 Minn. 52, 177 N. W. 937, the word "securities" is used in the act "not * * * in a literal but in a broad sense." This is equally true of the use of the same word in the title. The term "securities" is a more inclusive term than "investment contracts." It means "evidences of debt or of property" and includes all evidences of investment calling for a return in the form of income or profit.

4. Defendants contend that the term "investment contracts" is so vague and indefinite that it conveys no meaning sufficient to apprise citizens of what acts it is their duty to avoid. It is true that "before a man can be punished, his case must be plainly and unmistakably within the statute," which is invoked to make his act a crime. United States v. Lacher, 134 U. S. 624, 10 Sup. Ct. 625, 33 L. ed. 1080. We are of the opinion that there is no such vagueness here as to avoid the statute. The words have a meaning fairly well defined, and their meaning is stated in the Gopher Tire and Rubber Company case. And it may be noted that the contract in this case was issued more than a year after the Gopher Tire and Rubber case was decided.

The result is that each of the questions certified must be answered in the affirmative and the order of the trial court affirmed.

DIBELL, J. (dissenting.)

·I dissent. In my judgment the contract is not within "stocks, bonds or other securities sold or offered for sale within the state of Minnesota," used in the title, or "stocks, bonds, investment contracts, or other securities," "issued by an investment company," used in the body of the statute; and while such a contract, like numerous other individual or corporate contracts, might be regulated with propriety, if the legislature saw fit, it did not intend such regulation. Therefore I dissent.