### GEORGE E. KERST AND ANOTHER v. A. E. NELSON AND OTHERS.[1]

April 29, 1927.

No. 25,850.

**Contract within blue sky law.**

1. Contracts for the sale of portions of a tract of land to be used as a vineyard, with an agreement on the part of the seller to cultivate, harvest and market the crops and divide the net proceeds with the buyer, are contracts for investments in a profit-sharing scheme within the purview of the blue sky law of this state.

**Title of blue sky law sufficient.**

2. The title of L. 1925, c. 192, satisfies the requirement of art. 4, § 27, of the state constitution.

[1]Reported in 213 N. W. 904.

**Blue sky law applies to sales of securities by owner.**
    3.  Chapter 192 applies to sales of securities by the owner thereof as well as to sales by his representatives.

**Title of state organization act sufficient.**
    4.  The title of L. 1925, c. 426, is not so general as to render the act invalid.

Constitutional Law, 12 C. J. p. 762 n. 63; p. 764 n. 71, 72.
Licenses, 37 C. J. p. 275 n. 13, 16; p. 276 n. 31 New.
Statutes, 36 Cyc. p. 1036 n. 56; p. 1044 n. 1.

See note in 15 A. L. R. 262; 24 A. L. R. 523; 27 A. L. R. 1169; 30 A. L. R. 1331; 40 A. L. R. 1014; 2 R. C. L. Supp. 416; 4 R. C. L. Supp. 490; 5 R. C. L. Supp. 412; 6 R. C. L. Supp. 454.

Action in the district court for Hennepin county to restrain the defendants from interfering with the sale by plaintiffs of certain investment contracts claimed by defendants to be in violation of L. 1925, c. 192, known as the blue sky law. The appeal is from an order, Leary, J., sustaining defendants' demurrer to the complaint. Affirmed.

*William E. G. Watson,* for appellants.

*Clifford L. Hilton,* Attorney General, and *Ernest C. Carman,* Assistant Attorney General, for respondents.

LEES, C.

This is an appeal from an order sustaining a demurrer to the complaint on the ground that the facts stated do not constitute a cause of action.

The complaint alleges these facts: That, acting in their own behalf, appellants are selling land located in Riverside county, California, which they own or in which they have an interest; that the land is to be used as a vineyard and is worth approximately $1,000,000; that appellants have a contract with Rogers & Company for the cultivation of the land; that the contract is assignable in whole or in part to purchasers of the land and appellants intend to assign it to them or have Rogers & Company execute new contracts

with them; that respondents have informed appellants that they cannot legally make such sales in Minnesota without complying with the requirements of L. 1925, p. 197, c. 192, commonly known as the blue sky law, and threaten to prosecute them if they do not obey the law; that appellants are not an investment company or dealers in securities; that the title of c. 192 does not comply with the requirements of art. 4, § 27, of the constitution of Minnesota, prohibiting the enactment of a law embracing more than one subject not expressed in the title; that the act also contravenes the Fourteenth amendment to the federal constitution; and that because of the law's inapplicability to appellants and its unconstitutionality respondents should be permanently enjoined from interfering with appellants in selling the land. A copy of the form of contract to be issued to purchasers is attached to the complaint and made part thereof.

Four questions are presented: (1) Does it appear that appellants propose to sell property which cannot lawfully be sold in Minnesota without complying with the blue sky law? (2) Does the title of c. 192 sufficiently express the subject of the law? (3) Does c. 192 violate any provision of the state or federal constitutions? (4) Is the title of L. 1925, p. 756, c. 426, sufficient?

1. The contract with purchasers of the land provides that the buyer shall be entitled to the use and possession of the land, subject to the exceptions, reservations and restrictions mentioned in the contract. If the buyer elects to take possession, the seller is to continue to cultivate the vineyard and harvest and market the crops upon the same terms and conditions as if the buyer had not taken possession. A trustee is named to receive and disburse money collected for all crops produced and they are to be marketed in such manner and at such prices as the seller in his sole discretion shall deem advisable. After deducting the cost of delivering and collecting therefor, "the remaining balance shall be divided one-half to the seller * * * and one-half to the buyer." If the fund is not sufficient to cover the expenses, the deficit shall be made up by the seller provided the buyer is not in default. During the life of the

contract, the seller's agricultural experts shall have the exclusive control and management of planting, cultivating and caring for the land. The seller may farm between the vines and the net proceeds of any crops thus raised shall belong one-half to the seller and one-half to the buyer. Should the buyer so elect upon the termination of the contract, the seller will continue to cultivate, harvest and market the grapes for an additional period of time on terms to be mutually agreed upon. The contract may not be assigned by the buyer without the written consent of the seller, certified by the trustee, and any attempted assignment without such consent shall be void.

It is urged that the contract is nothing more nor less than one for the sale of land, and hence not within the purview of the blue sky law. The provisions to which we have called attention show that it is the purpose of the seller to induce investors to put money into the development of a large vineyard without giving them the control over the management which they would have if they bought stock in a corporation which owned and operated the vineyard. The right of the investor, at the expiration of five years, to take over and operate so much of the vineyard as is described in his contract of purchase is more fanciful than real, for it is hardly possible that he could operate his plot of ground successfully except in conjunction with the remainder of the vineyard.

State v. Summerland, 150 Minn. 266, 185 N. W. 255, and State v. Ogden, 154 Minn. 425, 191 N. W. 916, are somewhat similar to the present case in that they deal with sales of units of interest in land. A case more nearly like this is State v. Evans, 154 Minn. 95, 191 N. W. 425, 27 A. L. R. 1165. In each of these cases it was held that there must be a compliance with the blue sky law. State v. Agey, 171 N. C. 831, 88 S. E. 726, was cited with approval in State v. Evans. There a conviction of the defendant of a violation of the blue sky law of North Carolina was upheld. Defendant had sold small lots of land on certain cash payments, the balance to be paid over a term of years, with obligation on the part of a company to set out and cultivate figs, guaranteed as to the quantity of the bushes and the price of the figs at the end of the period. Other

cases are collected in 15 A. L. R. p. 262, and 24 A. L. R. p. 523. In our own decisions we have said that the purpose of the statute is to prevent offers to the public of investment contracts evidencing a right to participate in the proceeds of a venture before the securities commission ascertains whether there is something tangible behind it. This is such a venture and should pass inspection by the commission before the public is solicited to invest money in the contracts appellants propose to sell.

Appellants argue that since the act is of a penal nature (Gutterson v. Pearson, 152 Minn. 482, 189 N. W. 458, 24 A. L. R. 519) and since a penal statute is not to be extended to a case unless it is within the spirit as well as the letter of the statute (Berg v. Baldwin, 31 Minn. 541, 18 N. W. 821), the act should not be construed to include a transaction of the nature of that in which appellants propose to engage.

The law is entitled: "An act to prevent fraud in the sale of securities," etc. In defining the term "securities," the legislature has said that it shall include any investment contract and any interest in a profit-sharing or participating agreement or scheme. See § 1, par. (3). We think the contract in question is covered by this definition.

In view of the ingenuity of those who seek to induce men and women to put their money into far-off speculative enterprises over which the investor has little or no control, and in view of the paternalistic character of blue sky laws, it should be the policy of the courts to refrain from hampering the state officials in the performance of their duties by placing a narrow construction on such laws. This enterprise is within the spirit of the law as well as the letter, and we hold that appellants had no right to injunctive relief on the first ground on which they rely.

The facts alleged do not definitely present the case of a sale of an individual interest in realty. State v. Nordstrom, 169 Minn. 214, 210 N. W. 1001. If they did, we might reach a different conclusion, but that is a matter left open for future consideration.

2. The contention that the title of c. 192 does not satisfy the requirements of art. 4, § 27, of the state constitution, cannot be sus-

tained. The contention was made and overruled in State v. Evans, 154 Minn. 95, 191 N. W. 425, 27 A. L. R. 1165, involving the title of the former act. A similar objection was overruled in State v. Skinner, 20 Ala. App. 204, 101 So. 327, where the act was entitled: "An act to prevent frauds and impositions upon the people of the state and to protect investors."

We do not stop to consider the argument that the title is insufficient because it contains no reference to the purchase of securities while § 9 of the act provides that persons dealing in securities as brokers must be licensed; and a "broker" is defined in § 1, par. (4), as a person who purchases for another a security of which the broker is not the issuer. Appellants are not brokers. It is familiar law that a person who is not prejudiced by a particular provision of a statute cannot question its constitutionality on the ground that it prejudices others, unless perhaps the objectionable provision is so interwoven with the others that none can be sustained, or unless it seems reasonable to suppose that the statute would not have been enacted if the objectionable provision had been omitted. Dun. Dig. § 8935; State v. Hoffman, 159 Minn. 401, 199 N. W. 175; Central Union Tr. Co. of N. Y. v. Blank, 168 Minn. 312, 210 N. W. 34.

This observation is also applicable to the contention that, considering its title, the act goes too far in including in the definition of "securities" beneficial interests in the capital, assets, property or profits of any person. Appellants do not propose to sell such interests, but intend to sell investment contracts entitling the investor to participate in a profit-sharing scheme.

3. The contention that the legislature has attempted to strike down liberty to contract and destroy the right of an individual to dispose of his own property by a series of sales is met by State v. Nordstrom, 169 Minn. 214, 210 N. W. 1001. If the public is to be protected, sales by the owners of securities must be regulated, as well as sales by the owners' representatives. An investor is injured in the same way whether he buys a worthless security from one or the other. The character of the security offered for sale is the important consideration. If the security is within the scope of a statute

which is a valid exercise of the police power of the state, the seller must obey the law, whoever he may be. The uniform trend of our decisions is in an opposite direction from People v. Pace, 73 Cal. App. 548, 238 Pac. 1089, cited by appellants. See 7 Minn. L. R. p. 431.

4. Chapter 426, p. 756, L. 1925, is entitled: "An act in relation to the organization of the state government." The respondents derive their authority from this act. Appellants contend that the title of the act is not sufficient to satisfy the requirements of the state constitution. The contention cannot be sustained. The title is fairly suggestive of the subject of the act. Its generality is no objection if it is sufficient to give notice of the general subject of the proposed legislation and of the interests likely to be affected. It is unnecessary that the objects or purposes of the act should be set forth. The title is not designed as an index of the law. Dun. Dig. §§ 8907, 8908. In Johnson v. Harrison, 47 Minn. 575, 50 N. W. 923, 28 Am. St. 382, this court sustained an act entitled "An act to establish a probate code." The generality of that title is even more striking than the generality of the title of c. 426.

Order affirmed.