## STATE v. SIGURD M. SWENSON.[1]

### July 22, 1927.

### No. 26,150.

**Blue sky law was violated in contract quoted in opinion.**
  1. The contract set forth in the opinion evidences a sale of an interest in the invention and is a security within the meaning of the so-called blue sky law, and not being registered as required by the law the sale was unlawful.

**If reformed, contract would violate the law.**
  2. The contract if reformed to state the agreement as claimed by defendant would still be within the statute.

**Statute valid.**
  3. The statute is within the regulatory power of the legislature.

[1]Reported in 215 N. W. 177.

**Excepted cases not indefinite.**

4. The provision excluding from the act isolated sales not made in the course of repeated and successive sales is not void for indefiniteness.

**Charge correct.**

5. The charge in respect to the nature of the contract was without error.

Licenses, 37 C. J. p. 270 n. 44; p. 271 n. 50, 53, 55; p. 275 n. 13, 15; p. 277 n. 40; p. 279 n. 74.
Statutes, 36 Cyc. p. 969 n. 91.

---

See note in 15 A. L. R. 262; 24 A. L. R. 523; 27 A. L. R. 1169; 30 A. L. R. 1331; 40 A. L. R. 1014; 4 R. C. L. Supp. 491; 5 R. C. L. Supp. 413.

Defendant appealed from an order of the district court for Brown county, Olsen, J., denying his alternative motion for judgment or a new trial. Affirmed.

*Somsen, Dempsey & Flor* and *Sweet & Johnson,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Deputy Attorney General, *Ernest C. Carman,* Assistant Attorney General, and *T. O. Streissguth,* County Attorney, for the state.

TAYLOR, C.

[1] Defendant was convicted of violating the so-called blue sky law (L. 1925, p. 197, c. 192), by selling an interest in an unregistered "profit sharing or participating agreement or scheme," which interest was evidenced by the following instrument:

"Promoter         Inventor

"Sigurd M. Swenson      Arthur H. Wright

"Wright Rotary-Reciprocating-Combustion Motor Company

"Dyckman Hotel

"Minneapolis

"Sleepy Eye, Minn.

"June 29, 1926.

"It is Hereby Mutually Agreed by and between Sigurd M. Swenson, hereinafter referred to as the party of the first part, and

Thomas S. Merkel, of Sleepy Eye, Minnesota, hereinafter referred to as the party of the second part, as follows:

"Whereas, the party of the first part has an interest in the Wright Reciprocating-Rotary Combustion Motor, and the party of the second part is desirous of obtaining a certain interest in aforementioned motor. (Plans of motor are attached hereto and made a part hereof to this agreement as a description of the general principle involved.)

"In Consideration of the payment to the party of the first part the sum of One Hundred Fifty ($150.00) Dollars, receipt of which is hereby acknowledged, party of the first part agrees to pay to the party of the second part seventy-five (75) units of the net proceeds derived from the sale of motor patents, or seventy-five (75) units of the net proceeds derived from the sale of manufactured motors, or seventy-five (75) units of the net proceeds derived from royalties of aforementioned motor, as the case may be. (A one hundred per cent interest in the motor shall be equivalent to five hundred thousand (500,000) units.)

"Any improvements necessary for the ultimate success of the motor shall become a part to this agreement with interest in the same amount and manner as stated above. Furthermore, any improvements, such as air compressor, liquid pump, steam engine, or any manner in which general principle is eventually applied shall also become a part to this agreement with interest in the same amount and manner as stated above.

"Party of the second part shall be at liberty to inspect the motor at any time by getting in contact with the party of the first part.

"Sigurd M. Swenson,
"Party of the first part.
"Thos. S. Merkel,
"Party of the Second part."

The information charged that defendant made this particular sale in the course of repeated and successive sales of like interests, and

he admits making ten or more similar sales of like interests to other persons at about the same time.

The inventor had not completed the motor but was at work endeavoring to complete it. He had not applied for a patent, but intended to do so as soon as the motor was perfected. Defendant had acquired from the inventor an interest of 23½ per cent in the invention in consideration of funds furnished for the purpose of perfecting it. In making sales of units defendant explained to purchasers that the motor was uncompleted and the situation in respect to it.

[2] Defendant contends that the contract in question is not a security within the purview of the statute and therefore is not subject to the provisions of the statute. The question as to what contracts and obligations come within the statute has been considered in several of our former decisions, and the dividing line between those which come within its purview and those which do not has been pointed out with such definiteness that we deem a further discussion of that question unnecessary. While the facts of this case are not identical with the facts of prior cases, they bring this case within the doctrine of those cases, and we hold that the sale of the contracts in question is prohibited unless they are first registered as required by the statute. State, v. Gopher T. & R. Co. 146 Minn. 52, 177 N. W. 937; State v. Summerland, 150 Minn. 266, 185 N. W. 255; State v. Evans, 154 Minn. 95, 191 N. W. 425, 27 A. L. R. 1165; State v. Ogden, 154 Minn. 425, 191 N. W. 916; State v. Summerland, 155 Minn. 395, 193 N. W. 699; State v. Bushard, 164 Minn. 455, 205 N. W. 370; State v. Nordstrom, 169 Minn. 214, 210 N. W. 1001; Kerst v. Nelson, 171 Minn. 191, 213 N. W. 904.

Defendant claimed at the trial and offered to prove that the written contract did not correctly express the agreement; that defendant sold and Merkel bought an interest in the motor and not merely an interest in the profits as indicated by the writing; and that what was understood in reference to profits was simply that he would share therein by virtue of being an owner of an interest in the motor. His offer was to show that such was the contract as

made and understood by both parties. But conceding that the contract was as claimed and that the writing should be reformed to set it forth, that fact would be of no avail here, for the contract as so reformed would still be subject to the provisions of the statute. In State v. Ogden, 154 Minn. 425, 191 N. W. 916, the sale by the owner of "units" representing an interest in a leasehold of oil land was held to be within the statute. In State v. Nordstrom, 169 Minn. 214, 210 N. W. 1001, the sale by the owner of "securities" evidencing an interest in land supposed to be valuable as an oil prospect was held to be within the statute. In Kerst v. Nelson, 171 Minn. 191, 213 N. W. 904, contracts by the owner for the sale in small parcels of land to be developed as a vineyard were also held to be within the statute.

[3] Defendant further contends that he was simply selling interests in his own personal property and that, if the statute includes such contracts within its provisions, it is unconstitutional as violating his right to make such sales of his property as he pleases.

This question has already been considered by this court. In State v. Nordstrom, 169 Minn. 214, 210 N. W. 1001, it is said:

"The legislature found that an evil existed in the sale of securities and undertook to correct it. That there were other evils not touched by it is unimportant. Central Lbr. Co. v. South Dakota, 226 U. S. 157, 33 S. Ct. 66, 57 L. ed. 164. Nor is it arbitrary or oppressive or of a character interfering with the fundamental right of the liberty of contract. The statute is one common to most states, paternalistic in character, intended to protect the unwary against the frauds of those engaged in selling securities which represent nothing substantial. Their policy is for the legislature. Their limits are not without bound, but clearly the statute under consideration is well within permissible limits." Citing authorities.

In Kerst v. Nelson, 171 Minn. 191, 213 N. W. 904, it is said:

"The contention that the legislature has attempted to strike down liberty to contract and destroy the right of an individual to dispose of his own property by a series of sales is met by State v.

Nordstrom, supra. If the public is to be protected, sales by the owners of securities must be regulated, as well as sales by the owner's representatives. An investor is injured in the same way whether he buys a worthless security from one or the other. The character of the security offered for sale is the important consideration. If the security is within the scope of a statute which is a valid exercise of the police power of the state, the seller must obey the law, whoever he may be. The uniform trend of our decisions is in an opposite direction from People v. Pace, 73 Cal. App. 548, 238 p. 1089, cited by appellants. See 7 Minn. Law Rev. p. 431."

People v. Pace, mentioned in the above excerpt, is relied upon by defendant in this case but, as above indicated, it is not in harmony with the decisions of this court.

While it is recognized everywhere that the owner has the right to sell or dispose of his property when and to whom he pleases, it is also recognized everywhere that the manner of exercising that right may be regulated by law, and that he may be restrained from making such use or disposition of his property as will be injurious to the community, and may be required to comply with reasonable regulations deemed necessary for the prevention of frauds or the protection of the general public. The power to regulate is undoubted and is vested in the legislature. The legislature may exercise this power in such manner and to such extent as it deems necessary in order to cure or lessen recognized evils so long as it keeps within the bounds of legitimate regulation. We said in the Nordstrom case that this statute kept within such bounds, and we adhere to that opinion.

[4] The statute exempts from its operation isolated sales not "made in the course of repeated and successive sales of securities of the same issue." Defendant contends that the provision "in the course of repeated and successive sales" is void for indefiniteness. We are not of that opinion. Isolated sales are excluded; but a sale is not to be deemed an isolated sale where it bears such a relation to other similar sales occurring sufficiently near the same

time as to constitute one of a series of associated acts for the promotion of the same project.

[5] Defendant's claim that the court in its charge told the jury that the purchasers under these contracts received nothing for their money is not justified by the record. Defendant had insisted that he sold an interest in the particular motor in process of construction and not in the profits to be derived from the invention. Referring to this claim the court said:

"If this contract with Thomas S. Merkel sold nothing but a 75 units interest in a total of five hundred thousand units in a single and uncompleted motor, then it sold practically nothing; the interest sold would be so small as to be practically nothing.

"Unless the contract sold an interest in the proceeds from some patent to be obtained and the interest in the profit from the sale of motors to be manufactured and an interest in royalties that might be received, as stated in the contract, then it sold nothing, and if it did, as stated in the contract, sell an interest in prospective patents or proceeds from prospective patents and profits from motors to be thereafter manufactured and sold and profits in royalties that might be received; if that was and is the contract, then it was a sale prohibited by the security law and unlawful, unless the security was duly registered and it is not claimed that this security was registered."

In view of the position taken by defendant, we find nothing improper in this statement. That an interest of 75/500,000 in this particular uncompleted motor would amount to practically nothing is too obvious to require comment. Defendant claimed at the trial and at the argument in this court that what he sold was an interest in this particular motor. This position is untenable. The contract, whether considered as it is written or as reformed to express the agreement as claimed by defendant, plainly intends the sale of an interest in the invention and in the prospective profits to be derived therefrom. It cannot reasonably be construed otherwise.

Defendant had a fair and impartial trial. We have carefully examined the record and find no ground for granting a new trial, and the order denying it is affirmed.