STATE, by W. V. KNOTT, as State Treasurer, J. M. LEE, as State Comptroller, and GEORGE COUPER GIBBS, as Attorney General, as and constituting the Florida Securities Commission, v. F. E. HEMPHILL.

195 So. 915
Special Division A
Opinion Filed May 7, 1940

*George Couper Gibbs,* Attorney General, and *John L. Graham,* Assistant Attorney General, for Appellant;

*Frank R. Greene,* for Appellee.

THOMAS, J.—State of Florida, by W. V. Knott, J. M. Lee and George Couper Gibbs, as and constituting the Florida Securities Commission, filed its bill in the Circuit Court of Marion County to enjoin F. E. Hemphill, a resident of this State, from selling securities in violation of Chapter 14899, Laws of Florida, Acts of 1931, and amendments thereto, enacted in the years 1933, 1935 and 1939.

According to the bill of complaint, the transaction, which was charged with having a character bringing it within the inhibitions of the law, consisted of two aspects: (1) the de-

fendant offered to the prospective purchaser a contract undertaking to convey certain property in Florida free of all encumbrance by a good and sufficient warranty deed upon the payment of the installments representing the purchase price, which included "Tung grove development as specified in Development Contract * * * of even date herewith"; (2) as a part of the deal, the vendee could choose between two of the so-called development contracts identical except for compensation to the seller in event of renewal. Both of them provided for the clearing and the cultivation of the land, the planting, care, replacement and fertilization of tung trees on it and the fencing of the property. In case of a renewal at the end of four years, which was optional with the buyer, the added term was to be agreed upon and the cost to be that actually incurred by the vendor in the care and cultivation in addition to his compensation. The only difference in the stipulations for renewal was that in one the vendor was allowed ten per cent of the value of the crop produced each year, while in the other he was to receive ten dollars per acre for his services.

It is the position of the appellants that in negotiating such a transaction the vendor was "dealing in securities" and that, therefore, he should comply with the regulations of the Uniform Sale of Securities Act, *supra*.

We apprehend that if a construction so liberal were given the term "investment contract" would include practically every business transaction where one person paid money to another with the hope or expectation of profit. Because of the extensive list of items given in the first section of the law, under the definition of "security," in which is included the one we have quoted, it seems fitting that we should examine the scheme adopted by the Legislature for the protection of investors in order to determine their real purpose

and whether the contract for deed and the corresponding development argeements fall within the purview of the Act.

A comprehensive plan is set out to prevent any one from foisting on the unwary investor securities which are unsound, or, to use the language employed by the Legislature, to restrict the sale of securities to those which "would not work or tend to work a fraud upon the purchaser." Registration with the commission is accomplished by notification or qualification upon satisfactory evidence of the financial stability of the "issuer."

Bearing in mind the details of the proposed sales by the defendant in error, as the requirements of the Act are read, it is difficult to conceive any analogy between transactions affected by the law and his project to convey land and develop it for the purchaser.

Time and space do not permit an analysis of the regulations governing notification and qualification or the evidence necessary to entitle securities to registration. It was certainly not intended by the Legislature that one should qualify under the Uniform Sale of Securities Act before entering a contract for deed or before becoming obligated to clear land and plant and cultivate trees on it. A combination of the two undertakings does not seem to create such trading in securities as would warrant supervision by the commission.

The purchaser of land in a part of the State peculiarly suited to the production of certain crops should be able to acquaint himself with its quality without the aid of a commission. The condition of title is easily ascertainable and there would also be no need for any governmental agency to determine whether the seller was financially capable of (1) clearing the land of trees, stumps and other growth; (2) plowing, discing, harrowing and preparing; (3) planting seventy tung trees on each acre; (4) fertilizing, pruning

and cultivating the trees; (5) replacing dead trees; and (6) fencing with three strands of 'hog-proof fence."

The physical evidence of the progress of the improvement on land held by him under the contract for deed would at all times be apparent to the purchaser and meanwhile he would, if satisfied with the seller's performance, be paying the installments on his investmeent. That is a system of agricultural development easily distinguishable from the investment contracts contemplated in the Act.

We have carefully examined the authorities furnished by the appellants to support their position and have not been impressed with their relevancy.

No objection is found to the contract of purchase and there are no unusual features in it save the provision we have quoted with reference to cultivation of soil and trees by the vendor. Stated succinctly then, the real question is whether the obligation of the seller to plant and cultivate the tung trees makes of the whole transaction a dealing in securities coming under the regulations of the Act.

The elements of an investment contract of the nature contemplated by the Legislature in providing protection against fraud seem lacking. Here the buyer has possession of the property bought. Its value is enhanced from month to month as he pays his installments, and if the performance of the seller is not in accord with his promises the buyer may cease to pay further. No attempt is made to guarantee returns or profits on the investment, no money is delivered to the seller except for the purchase price of the land and for the work and material furnished in setting it in trees for the production of tung oil.

Confining our decision strictly to the facts we have outlined, we hold that the chancellor properly dismissed the bill.

Affirmed.

Terrell, C. J., and Chapman, J., concur.

Whitfield, J., concurs in opinion and judgment.

Justices Brown and Buford not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.