**BLACKWELL et al. v. BENTSEN et al.**

No. 14127.

United States Court of Appeals,
Fifth Circuit.
April 27, 1953.
Rehearing Denied July 27, 1953.

E. H. McIlheran, Smith, McIlheran & Smith, Weslaco, Tex., for appellants.

Roger S. Foster, Gen. Counsel, Securities & Exchange Commission, Alexander Cohen, Sp. Counsel, Washington, D. C., amici curiae.

Lloyd P. Lochridge, Jr., Mission, Tex., Sidney L. Farr and Jackson Littleton, Edinburg, Tex., Hill, Lochridge & King, Mission, Tex., Kelley, Looney, McLean & Littleton, Edinburg, Tex., for appellees.

Before HOLMES, RUSSELL and STRUM, Circuit Judges.

STRUM, Circuit Judge.

The basic question presented by this appeal is whether or not the district court erred in dismissing the complaint for lack of federal jurisdiction. This in turn involves two constituent questions: (1) Do the transactions described in the complaint constitute "investment contracts" as contemplated by section 2(1) of the Securities Act of 1933, 15 U.S.C.A. § 77b(1); and (2) Does the use of the mails in consummating these transactions entitle plaintiffs to relief under section 12(2) of said Act, 15 U.S.C.A. § 77l(2). The district judge answered both these questions negatively.

There is no diversity of citizenship. Federal jurisdiction depends entirely upon alleged violations of the Securities Act of 1933.

In substance, the complaint alleges that during the latter part of 1949 and early 1950, each of the 9 appellants, plaintiffs below, purchased lands, usually in units of 20 acres, from Pummill Development Company, one of the defendants below, for the purpose of developing the same into small citrus groves. These small tracts were parts of an 800 acre tract owned by the Development Company, and said to be suitable for citrus cultivation.

Concurrently with, or shortly after, executing the land purchase contract with Pummill Development Company, the purchaser also executed a care and management contract with Pummill Management Company, under which the latter agreed to plant young citrus trees on the land, cultivate and develop the grove, harvest and market the crops, and remit the proceeds to the owner, after deducting 5% of the proceeds as compensation for harvesting and marketing services. A separate consideration was paid for planting the trees. While the Management Company undertook full responsibility for harvesting and marketing the crops in the absence of directions from the owner, the management contract contained provisions for an investor to give directions as to the marketing of the crop on his tracts, in which

event the Management Company would follow these directions but would apparently still supervise the harvesting and marketing and would still receive its compensation therefor.

The defendants Earl and Carl Pummill were the organizers of the two Pummill companies, and are directors and stockholders therein. The purchase contract for the land, and the accompanying management contract, were in each instance executed by Carl Pummill, who was president of both companies. The management contracts usually covered a period of one year, with the option to renew annually up to five years.

Appellants, and most of the other purchasers, were inexperienced in citrus culture and resided outside the Rio Grande Valley of Texas in which these lands were located. Prospective purchasers were induced by salesmen of the vendors to visit the vicinity of the lands where they were entertained by the vendors, and taken on a tour of the lower Rio Grande Valley. They were told by the vendors that "by investing in this citrus development * * they could get in on an 800 acre unit which would be developed by one company in a uniform manner, and under the management of citrus experts, for the joint benefit of all investors," and that "they would not have a thing to worry about; that the Management Company would take care of all problems which might arise, and the investor would only have to sit back and reap the dividends." It was further represented that the property would be paying all of its expenses in 3 years, and that the investment would produce a minimum return of 20% per annum after 5 years.

Investors would usually buy one or more 20 acre tracts on one of these visits, and a deed or contract therefor, and the management contract to accompany the same, would be later mailed to the purchasers at their homes. Plaintiffs allege that they were induced to purchase these lands, and enter into management contracts, by fraudulent misrepresentations and concealment of material facts concerning the character, quality and value of the land sold, and in other respects.

With the two possible exceptions hereinafter mentioned, these are in principle the same type of purchase-management contracts which have been held by the Supreme Court to be "investment contracts" within the meaning of section 2(1) of the Securities Act of 1933. Securities & Exch. Comm. v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244; Securities & Exch. Comm. v. C. M. Joiner Leasing Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88. See also Securities & Exch. Comm. v. Bailey, D.C., 41 F.Supp. 647, decided prior to the Joiner and Howey cases.[1] In the Howey case, supra, the court held that in using the term "investment contract" in the Securities Act, Congress employed a term the meaning of which had been crystallized by prior judicial interpretations, and that the term covered contracts of the type here involved. We notice minor and non-determinative differences between the facts of this case and those in the Howey and Joiner cases, but the determinative factors are in principle the same.

Here, as in the Howey and Bailey cases, supra, the sales and management contracts, though separate in form and ex-

1. Many other courts have taken the same view. Amongst the decisions are: Securities & Exchange Comm. v. Tung Corp. of America, D.C., 32 F.Supp. 371; Kerst v. Nelson, 171 Minn. 191, 213 N.W. 904, 54 A.L.R. 495; State v. Evans, 154 Minn. 95, 191 N.W. 425, 27 A.L.R. 1165; State v. Gopher Tire Co., 146 Minn. 52, 177 N.W. 937; State v. Agey, 171 N.C. 831, 88 S.E. 726; Webster v. United States I. Realty Co., 170 Minn. 360, 212 N.W. 806; Prohaska v. Hemmer-Miller Co., 256 Ill.App. 331; In re Waldstein, 160 Misc. 763, 291 N.Y.S. 697; Note, 87 A. L.R. 82. Securities & Exch. Comm. v. Crude Oil Corp., 7 Cir., 93 F.2d 844; Securities & Exch. Comm. v. Payne, D. C., 35 F.Supp. 873; Securities & Exch. Comm. v. Universal Service Ass'n, 7 Cir., 106 F.2d 232; Securities & Exch. Comm. v. Wickham, D.C., 12 F.Supp. 245; Gracchi v. Friedlander, 93 Cal.App. 770, 270 P. 235. Cf. contra, State v. Hemphill, 142 Fla. 728, 195 So. 915.

ecution, are closely allied in performance, as well as in personnel. They form constituent parts of what is essentially one transaction. In essence, what the defendants are really offering, and certainly what the average purchaser is really buying is, not land for its intrinsic value as such, but a producing orange grove as a source of income, without which they would not be interested in purchasing the land. Purchase of the land is merely the conduit through which the investment is accomplished. Instead of a stock certificate evidencing a share in a common ownership of capital assets, these purchasers receive a deed evidencing an ownership in severalty. But the paramount emphasis is upon the income to accrue, which is the chief, if not the sole, attraction to the purchaser. Based upon the defendants' representations, the purchaser's expectation is that for a sum of money invested in a small tract of land which the purchaser places in the hands of the defendants for cultivation along with many similar and contiguous tracts owned by others, he will ultimately receive an income from the yield produced by defendants' developing and managing activities. This is not an ordinary purchase of land as such. It is an investment for the purpose of producing an income through the activities of others than the owner. Consequently the transactions constitute "investment contracts" within the meaning of that term as defined in the Howey case, and other cases, supra.

It is significant that few, if any, of these small tracts are purchased by citrus farmers who wish to cultivate them as a personal farming enterprise. The overwhelming percentage of purchases are by persons who are inexperienced in citrus cultivation, who live at a great distance from the lands, and who apparently have no intention of occupying the land or cultivating it by their own efforts, but who are attracted thereto solely by the income to be derived through cultivation of the land by the Management Company.

There is a dispute of fact as to whether two of the purchasers here involved entered into management contracts. If they merely purchased land, without more, such a purchase would not constitute an investment contract within the meaning of the Securities Act. In view of the dispute on this point, we leave that question open for decision on the facts as they develop at the trial. As to all those, however, who executed care and management contracts in connection with their contract of purchase, we hold on the authority of the cases above cited, that the transactions constitute "investment contracts" within the meaning of section 2(1) of the Securities Act of 1933. At least as to these, the complaint should not have been dismissed.

■■ Though the mails are not alleged to have been used for the purpose of sending out prospectuses or advertising these lands for sale, all deeds and management contracts by which the transactions were consummated were returned by the vendors to the purchasers through the mails. We are aware of the conflict in the authorities on the subject, but in our opinion this is a sufficient use of the mails to bring the case within section 12(2) of the Act. This is a remedial statute. It should be liberally construed to accomplish the dominant legislative purpose in adopting it, which is to prevent the use of the mails, and other instrumentalities of interstate commerce, in the perpetration of investment frauds. Section 12 of the Act, so far as here material, provides: "Any person who * * sells a security * * * by the use of * * * the mails, by means of a prospectus *or oral communication,* (Italics supplied) which includes an untrue statement of a material fact * * * shall be liable to the person purchasing such security from him * * *." Here the sales were apparently by oral communication, but the transactions were consummated by the use of the mails, which in our opinion brings the transaction within the statute. Delivery of the deeds and contracts is an integral part of the sale. Schillner v. H. Vaughan Clarke & Co., 2 Cir., 134 F.2d 875, 165 A.L.R. 1232 (note); Moore v. Gorman, D.C., 75 F.Supp. 453. Compare, contra, Kemper v. Lohnes, 7 Cir., 173 F. 2d 44, which was followed by the district court.

694

Since at least some, if not all, of these transactions are within the purview of the Securities Act, federal jurisdiction exists and the complaint should have been retained.

Reversed and remanded.