## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Richmond Crawford, Jr., et al.

v.

C. Bryant Clarke et al.

October 17, 1962

Case No. A-5671

By JUDGE ALEX H. SANDS, JR.

Plaintiffs claim to have bought from defendant Falls his entire interest in Reliance Engraving Co., Inc., which was represented by 50% of the stock in such company, that in effecting such sale, Falls and the other defendants acting either for or in conjunction with him made certain misrepresentations concerning the business and withheld certain information concerning the business resulting in plaintiff's acquiring an interest of far less value than contemplated and in their assuming certain liabilities which they would never have assumed but for such false misrepresentations.

Plaintiffs contend that the alleged behavior on the part of defendants is actionable under Chapter 5 of the Code of Virginia of 1950 as amended, commonly referred to as the Virginia "Blue Sky" Law and particularly under sections 13.1-502 and 13.1-522 thereof.

Plaintiffs, in their bill of particulars filed in respect to their claim against Falls on April 19, 1962, unequivocally elect to proceed under said sections 13.1-502 and 13.1-522 exclusive of any other remedies which they might have.

Defendants (with the exception of Clarke) have demurred to the plaintiffs' bill as amplified by the bills of particulars which have been filed, the first ground

of such demurrer challenging plaintiffs' right to relief under Chapter 5 of the Code of Virginia.

This is the single issue before the court at this time.

Defendants contend that the transaction between Falls and Crawford is not within the purview of the Act which is purely a regulatory group of statutes aimed at the prevention of certain iniquitous and evil practices in the offering of and the rendering of advice in connection with the handling of securities and is limited in its scope of application to those persons or businesses engaged in some form of promotional activity and is in no manner applicable to an isolated sale by the owner of a security who is neither issuer, broker-dealer nor agent and who is engaged in no promotional activity.

Plaintiffs on the other hand rely upon the language "any person" occurring in sections 13.1-502 and 13.1-522 which define "unlawful practices" under the act and the "Civil Liabilities" applicable thereto, and argue that the use of this language precludes any such limitations as defendants would seek to impose upon the applicability of the Act.

In view of the language "any person" in the two sections in question, plaintiffs' contention cannot be brushed aside lightly. If read out of context and without consideration of the remainder of the Act, these sections would undoubtedly have of necessity to be construed in accordance with plaintiffs' contention. In attempting to construe any statute, however, the legislative intent must be sought out and all related sections of any chapter or portion of the Code must be considered and construed together, *Moore* v. *Downham*, 166 Va. 77 (1936), and in arriving at the legislative intent it is axiomatic that the old law, the mischief sought to be remedied and the remedy contemplated are to be considered. *Ryan* v. *Krise*, 89 Va. 728 (1893). A review of the forerunner statutes to the present "Blue Sky" legislation, State and Federal, dates back to 1285 A.D. In his most recent text on *Securities Regulation* (1961) Louis Loss (Vol. 1, pages 1-23) gives an excellent historical review of the various legislative enactments in England, the separate states and the Federal government leading up to the adoption of the Securities Act of 1933 (Federal) and the drafting of the Uniform Securities Act. The author of the article "The Virginia Securities Act" in 45 Va. Law Review, page

303, also gives a good review of background history. Three very comprehensive annotations in 37 A.L.R. 2d page 649, 50 A.L.R. 2d 1228 and in 85 Law. Ed. beginning at page 506 give a good insight into those sections of the Federal Securities Act after which the civil liability provision of the Uniform Securities Act and the Virginia Act were modeled. Without belaboring the point further suffice it to say that the basic intent of all of the acts, dating back to the earliest English statute on the subject, is aptly summed up thus by the court in *Fratt* v. *Robinson*, 203 F.2d 627, where, after commenting upon the plethora of authority construing the Federal Securities Acts the court says:

> There is one phase common to the reasoning of all of the cases: Sec. 10 is in aid of *the end sought by the Act,* to-wit: the lessening of fraudulent and sharp practices *in the securities market.*

But we do not have to go beyond Virginia to find interpretative authority of our own "Blue Sky" Act and the interpretation of our Act by our court is in accord with the general interpretation of purpose above reviewed. In commenting upon the intent and purpose of the Virginia Blue Sky Law as codified in the Code of 1930 our court says:

> The object and purpose of the act was to suppress an existing and growing evil in this state. *The investment market* was flooded with stock of little or no value and *promoters* and *stock salesmen,* well versed in trade talk, preyed upon an unwary public by inducing it to purchase this character of stock. (Emphasis supplied.) *Va. Brewing Co.* v. *Webber*, 167 Va. 67 (1936).

This is in accord with other Virginia authority defining the purpose of the act. *Watters & Martin* v. *Homes Corp.*, 136 Va. 114 (1923).

Plaintiff urges that these expressions have no application to the present act which is new, different and

based upon provisions of the Federal Securities Act. Not only is there found no basis for a belief that the *purpose* of the present act of its scope is materially different from the older acts, but it is significant that the language of the 1930 act (sec. 3848(62)) which imposed penal punishment leads off with the same phrase "Any person."

But even should plaintiffs' contention be adopted that Federal authorities should be controlling in construing the Virginia act, (and this contention is not believed sound in view of the difference in purpose and scope of the acts) the court does not find Federal authority supporting plaintiffs' views. *Woodward* v. *Wright*, 266 F.2d 108 involved the application of 15 U.S.C.A., sec. 77L to the sale of fractional parts of an oil lease where "communication in interstate commerce" had been used during the transaction. Sec. 77L has two parts. Part 1 deals with breaches of the registration requirements (77e). Part 2 deals with transactions involving use of mails or interstate communication. The court in holding 77L(1) inapplicable states that it was the intent of Congress to exempt from the act isolated sales or assignments (see page 112 # 1 and # 2 and page 115 # 10). The court then holds that the mails or interstate communication having been used that the sale in question was actionable under 77L(2). The purpose of 77L(2), however, has always been held to be the prevention of the use of mails and interstate communications for *investment frauds* regardless of the nature of the particular sale. *MacClain* v. *Bules*, 275 F.2d 431; *Blackwell* v. *Bentsen*, 203 F.2d 690.

There is one further consideration as to which the court finds no authority but which it is felt should have some bearing, though indirectly, upon the applicability of the statute. The pleadings certainly suggest that the thing being negotiated for was an interest in a business and not a sale and purchase of securities. It is true, of course, that this interest, being in an incorporated enterprise, was represented by stock, but from a practical standpoint would the basic object of the transaction not have been the same had plaintiffs purchased a one-half interest in the same business being operated as a partnership? It is not thought that this is the type transaction that was ever contemplated by the Virginia Legislature or any other legislative body in the passage

of statutes aimed at the prevention of "fraudulent practices in the securities market."

For the above reasons it is felt that Chapter 5 of the Code of Virginia of 1950 as amended has no application to the transaction involved in this suit. The demurrer is, therefore, sustained without prejudice to the rights of the plaintiffs to pursue such other remedies as they might have at law or in equity.